A89A1350. ROBERTS v. THE STATE.
(386 SE2d 921)

BEASLEY, Judge.

Following a bench trial, Roberts appeals his conviction and sentence for violation of the Georgia Controlled Substances Act by possessing cocaine with intent to distribute, OCGA § 16-13-30 (b). He contends that his motion to suppress evidence of contraband seized during a warrantless search of his person was improperly denied resulting in violation of his rights under the State and Federal Constitutions. Although Roberts cites Ga. Const. 1983, Art. I, Sec. I, Par. XIII, he does not develop this ground but relies instead solely on federal constitutional law. The mere reference does not adequately raise a separate state constitutional ground for consideration. See *Burroughs v. State*, 190 Ga. App. 467, 471 (2) (a) (379 SE2d 175) (1989).

Appellant contends (1) the evidence was seized as a result of an investigatory stop which was illegal because there was no articulable

suspicion to believe he was armed and engaged in criminal activity as required by *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968); (2) assuming the initial stop was valid, the subsequent search was illegal because the *Terry*-type frisk for weapons was used as a pretext to justify the seizure of the evidence; (3) there was no independent probable cause to believe that he possessed narcotics thereby justifying a warrantless search and seizure.

"As a general rule, ' "the trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous." ' [Cit.]" *Santone v. State*, 187 Ga. App. 789, 790 (1) (371 SE2d 428) (1988). The evidence at the motion to suppress hearing consisted solely of the testimony of arresting officer O'Brien. At approximately 1:00 p.m., the police received an anonymous call that at a certain location several individuals were standing at the corner by a vacant house, drinking beer and possibly selling drugs. No more than five minutes later O'Brien, in plain clothes and an unmarked vehicle, responded to the call with another officer.

The officers positioned themselves approximately one hundred to one hundred fifty yards from the scene, with an unobstructed view so as to try to observe if there were any drug transactions going on. Officer O'Brien believed his vehicle was visible from the subjects' vantage point. Four people, one of whom was Roberts, were standing near the corner of the house. Two of them were drinking beer. O'Brien could not recall if Roberts had been drinking. Another individual drove up to where the four were standing, parked his car, got out, walked over to the four, and began talking to Roberts. The man did not get closer than ten to fifteen feet of Roberts. Roberts looked "as though he was saying no to the man, kind of moved his hands toward him like no, nothing going on." The man turned and left. The encounter lasted not even fifteen seconds.

The officers approached the four. O'Brien asked Roberts for some identification, if he lived in the area, and what exactly he was doing. Roberts gave the officer some identification and stated that the individual who had come by was asking for directions. O'Brien informed Roberts that they had had a complaint and asked him if he knew anything about anybody being out there selling drugs. Roberts responded that he did not know about it. O'Brien asked Roberts if he had anything on him. Roberts voluntarily emptied his pockets and showed some money, a comb, and a couple of other items.

When Roberts emptied his pockets, O'Brien looked down and noticed a bulge, a small piece of paper sticking out at Roberts' waistline. Roberts saw O'Brien notice the bulge and he kind of turned to try to hide it. O'Brien asked him what it was. Roberts responded, "Oh, that is nothing," and told O'Brien to leave it alone. O'Brien reached for the bulge and Roberts pushed him away. At that point, O'Brien did

not know what Roberts had. O'Brien put Roberts up against the car and began to search him. O'Brien felt the outside of the bulge; it was hard. O'Brien thought it might be a small pocketknife. The officer pulled the item out. It was a lunch-size paper bag that had been cut in half; inside were four small plastic baggies, "all balled up in a package," containing a white powder which field tested positive for cocaine.

"The United States Supreme Court has said: 'In *Terry* [*v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)] the Court first recognized "the narrow authority of police officers who suspect criminal activity to make limited intrusions on an individual's personal security based on less than probable cause." [Cit.] . . . (T)he Court implicitly acknowledged the authority of the police to make a *forcible stop* of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity. 392 U. S., at 22 . . . When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure (of person or property) based on less than probable cause . . . In *Terry*, we described the governmental interests supporting the initial seizure of the person as "effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U. S., at 22.' [Cits.]

" '[R]easonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop . . . The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. [Cits.] . . . (T)o justify (a less-than-probable-cause) seizure an officer must have a reasonable suspicion of criminal activity based on "specific and articulable facts . . . (and) rational inferences from those facts. . . ." *Terry v. Ohio*, 392 U. S. at 21. [Cit.]' [Cit.]

"Our Georgia appellate courts have explained these concepts in applying the United States Supreme Court interpretations of the Fourth Amendment parameters: ' "It is clear that in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh[s] the momentary inconvenience and indignity of investiga-

tory detention." [Cit.] It is also clear that what is a "reasonable articulable ground" for the detention may be less than probable cause to make an arrest or conduct a search, but must be more than mere caprice or arbitrary harassment. [Cit.] Each case depends on its own facts. "The point at which the routine protection of the public becomes an invasion of the right of privacy of the individual must rest on the particular circumstances involved." (Cit.)' [Cits.]" *State v. Hodges*, 184 Ga. App. 21, 23-24 (360 SE2d 903) (1987) which involved a search of defendants' vehicle as well as the detention of the defendants.

The receipt of information from an unidentified informant is one of the factual predicates upon which an articulable suspicion may be founded. See *Chumbley v. State*, 180 Ga. App. 603, 604 (349 SE2d 823) (1986). "[O]therwise would not only defy common sense but might well have the effect of discouraging private citizens who observe suspect conduct from reporting such conduct to law enforcement officials. If this were to happen, a valuable link in the chain of citizen-government cooperation would be lost, and the attainment of the goal of a stable, safe, law-abiding society retarded. Moreover, the effect upon law enforcement personnel could hardly be otherwise than detrimental." *State v. Brown*, 178 Ga. App. 307, 309 (2) (342 SE2d 779) (1986).

In this case, the information received from the anonymous caller regarding the presence of the individuals at the given location and their behavior was affirmed by the officers' own observations. In addition, the officers witnessed the approach of the fifth individual, the nature of his interaction and communication with defendant, and the individual's hasty departure, all in light of the officers' belief that their presence was visible to the four. Even arguably innocuous details supplied by an informant when coupled with first hand corroboration by trained law enforcement officers may be sufficient to raise a reasonable and articulable basis to suspect criminal activity. The four men loitering near an empty house on a street corner in mid-day, the encounter between Roberts and the approaching individual and hasty departure in the presence of observable plain clothes officers, the tip that possible drug activity was occurring, all support the trial court's conclusion that the officers had a reasonable, articulable basis to suspect that Roberts was involved in drug activity. This justified the initial detention.

After O'Brien questioned Roberts and observed the bulge at his waist, which Roberts tried to hide or at least keep unidentified, O'Brien was authorized to conduct a limited *Terry* search for weapons. He did so, in compliance with the ordinarily two-step process approved in *Terry*. See discussion of this process in *Wyatt v. State*, 151 Ga. App. 207, 210 (1) (a) (259 SE2d 199) (1979). O'Brien patted

Roberts down, felt that the bulge was hard, and thought it might be a pocketknife. This permitted him to intrude enough to ascertain if the object was or contained a weapon. Contrary to appellant's contention, the evidence does not compel the conclusion that the *Terry* search was mere pretext to hunt for contraband.

Once the permissibly-explored bulge turned out to be apparent contraband, the officers had sufficient and independent cause to arrest Roberts. Compare *Rebeiro v. State*, 186 Ga. App. 518 (367 SE2d 857) (1988), in which the issue was one of probable cause for warrantless arrest, in which there was no evidence of a limited search for weapons, and in which the defendant gave a plausible, non-incriminatory explanation for the observable leg bulge.

The detention and search of appellant and seizure of the contraband was not afoul of the Federal Constitution on the bases urged; denial of suppression was not error.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 3, 1989.

*Claudia S. Saari*, for appellant.

*Robert E. Wilson, District Attorney, Thomas S. Clegg, Eleni A. Pryles, Assistant District Attorneys*, for appellee.