A91A1352. THE STATE v. CORLEY.

(411 SE2d 324)

BIRDSONG, Presiding Judge.

This is a prosecution for possession of marijuana. The State appeals the trial court's grant of the motion to suppress of appellee Joseph Mitchell Corley. *Held*:

When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them. *Morgan v. State*, 195 Ga. App. 732, 735 (394 SE2d 639); *State v. Combs*, 191 Ga. App. 625, 627 (382 SE2d 691).

The evidence is disputed in some aspects, but construed in favor of the trial court's ruling, it shows that appellee Corley and Tim Tanner were in the parking lot of a convenience store near a pickup truck which Tanner had been driving and to which he claimed ownership. Tanner was sitting in another vehicle and appellee was standing in the parking lot when police, including a narcotics officer whom appellee knew, stopped their vehicle alongside appellee and began to talk

to him. Tanner got out of the vehicle where he was sitting and went towards the pickup truck. The officer testified that when he and his partner pulled into the parking lot, appellee walked over to their car and spoke to them; and that he detected a slight slurring in appellee's speech. Appellee denied having done this, and testified, "What would I want to walk over to a narcotics car for when we've got marijuana in [the] truck for to talk to him when [sic] I know he's a narcotics agent." The police directed both Tanner and appellee to empty their pockets; they did so, emptying their pockets on the hood of the pickup truck. According to the police, they asked Tanner if they could "look inside" his truck, and Tanner said yes. According to appellee and Tanner, consent to search was never asked; the police simply went inside the truck and started looking around. The searching officer saw a closed drawstring "Crown Royal" bag "laying on the seat in the middle of the driver's [side]." He could not see inside it, but suspected it contained illicit drugs, and he opened it and discovered less than an ounce of marijuana. The officer further testified that after the search appellee stated, "Tanner didn't have anything to do with it, that *it* was his." (Emphasis supplied.)

Appellee, who was the passenger in Tanner's vehicle on that evening but was standing outside it when the police drove up, contends he never gave permission to search, he was not under arrest, the marijuana was not in plain view, and he had a reasonable expectation of privacy in the searched premises; the State contends appellee, as a mere passenger, had no standing to complain of the search because he had no reasonable expectation of privacy in the passenger compartment of Tanner's vehicle, citing *McGhee v. State*, 253 Ga. 278, 279 (319 SE2d 836) and *Mecale v. State*, 186 Ga. App. 276, 277-278 (367 SE2d 52).

Appellee testified that he did not approach the officer's car because "what would I want to walk over to a narcotics car for when we've got marijuana in [the] truck . . . when I know he's a narcotics agent." He thus again, albeit in a sarcastic manner, asserted an interest in the marijuana which was in the closed bag in the front seat, and for reasons hereafter discussed, had a reasonable expectation of privacy in the premises such that the search not incident to arrest violated his constitutional rights. See *Mecale*, supra; *State v. Scott*, 176 Ga. App. 887, 888-889 (339 SE2d 276). See *Rakas v. Illinois*, 439 U. S. 128, 148 (99 SC 421, 58 LE2d 387).

This is an appeal by the State of the trial court's granting of appellee's suppression motion; and it is our obligation on appeal to construe the evidence most favorably to support the trial court's ruling. See *Santone v. State*, 187 Ga. App. 789, 790 (371 SE2d 428). Immediately following the search and also at the suppression hearing, appellee readily asserted an interest in the contraband; at no time did ap-

pellee expressly deny that the marijuana was his. This critical fact pattern clearly distinguishes the case at bar from *Rakas*, supra, *Mc-Ghee*, supra, and *Mecale*, supra. Further, the bag containing the contraband was not in the trunk, the glove compartment or under the passenger seat, areas where appellee conceivably might not enjoy a reasonable expectation of privacy. *Rakas*, supra at 148. Rather, the contraband in this case was in a closed Crown Royal bag "laying on the seat in the middle of the driver's seat" *of a pickup truck*, an area within an arm's reach of the appellee passenger and clearly not outside the range of his reasonable expectation of privacy. In *Rakas*, the Supreme Court of the United States had an opportunity to declare that all passengers of vehicles would henceforth lack sufficient expectation of privacy to challenge the search of the automobile in which they were riding; the majority made no attempt to assert such a broad holding. Rather a reading of *Rakas* reveals that repeatedly the Supreme Court noted the defendants had failed to assert, at any time, that they owned or possessed the rifle or shells seized, that is, defendants never asserted an interest in the property seized; moreover, the Court expressly determined that the areas such as a glove compartment, under the car seat, and the trunk are storage areas in which a passenger qua passenger simply does not normally have a legitimate expectation of privacy. *Rakas*, supra at 148-149.

As stated, in this case the seized property was not found in any area normally used by the vehicle owner for storage, but was found lying in a bag on the pickup truck seat in the approximate location of the middle of the driver's seat. Under the circumstances here presented, we are satisfied appellee was vested with that reasonable expectation of privacy necessary to authorize him to contest whether the police violated his Fourth Amendment rights during the course of their search and seizure. In this regard, a subjective expectation of privacy is reasonable if it is one that society is prepared to recognize as reasonable. *Rakas*, supra at 143-144. In this instance, viewing the facts and drawing all reasonably permissible inferences therefrom to support the trial court's ruling, *as we are required to do*, we find: (a) appellee claimed an interest in the contraband and from appellee's assertion of the broad claim that he owned "it," it may reasonably be inferred he also was asserting ownership in the bag in which the contraband was being carried (not that that is essential in the disposition of this case); and, (b) appellee either owned or partially owned the vehicle (as discussed below) or was in the vehicle as a passenger with the owner's consent. Although not necessary to the disposition of this case, it also reasonably may be inferred (a) that at some point in time appellee carried marijuana and scales into the vehicle with him, and these contraband items were carried in a Crown Royal bag — the closed bag in which the items were found during the search; and (b)

appellee placed the bag on the front seat of the pickup truck where the closed bag was found, lying in the open, by the officer.

It is apparent beyond doubt that society is prepared to accept as reasonable that both vehicle owners and their authorized passengers may carry bags and parcels with them into the automobile; it is further our view that society is prepared to recognize a right of privacy in the contents of those closed packages and bags, which legitimate passengers and vehicle owners carry with them into the vehicle at least to the extent of vesting the passenger or owner with lawful authority to assert a violation of Fourth Amendment rights due to an illegal search or seizure of those objects. We cannot comprehend that society is willing to give up the reasonable expectation of a right of privacy to closed packages and bags, placed in plain view and within reasonable proximity of the person asserting a legitimate interest therein — thereby in essence vesting the police with virtual carte blanche authority to conduct illegal searches and seizures thereof with impunity — merely because those items must be transported in an automobile to travel from point A to point B in the company of the owner or person claiming an interest therein. Accordingly, we find appellee did enjoy a subjective expectation of privacy in the bag and its contents in this instance within the meaning of *Rakas. Rakas,* supra at 143-144, citing *Katz v. United States,* 389 U. S. 347, 361 (88 SC 507, 19 LE2d 576) (Harlan, J., concurring).

Incidentally, although the weight of evidence in this case is that the vehicle belonged to the co-defendant Tanner, appellee's suppression motion referred, at least twice, to the vehicle as the "defendant's vehicle." Also during the suppression hearing, appellee testified that the officer "told both of us to stand over there, while he searched *our* car," and that he did not protest the search because "what am I supposed to say to him? You can't search *my* car." (Emphasis supplied.) The trial court made no express finding of fact other than to hold that "there is a conflict in the testimony." Thus, conceivably the trial court could have found as fact that the pickup was either jointly or exclusively owned by appellee. Regardless of who owned the vehicle, however, for the reasons stated above, we find that appellee had the requisite reasonable expectation of privacy to contest the legality of this particular search and seizure.

Even assuming the officer asked for and obtained a consent to search, his question to Tanner, the avowed owner of the truck, was: "Do you care if I look inside of it"; whereupon, Tanner having said "no, go ahead," the officer proceeded to open the closed drawstring bag in the front seat. It is apparent that, according to the officer's own testimony, as in *State v. Diaz,* 191 Ga. App. 830, 832 (383 SE2d 195), the officer asked merely for permission to "look inside" the vehicle and "gave . . . no indication that he intended to seize and ex-

amine the contents of any items or containers therein. 'This was the outer extent of investigation consented to; the scope of the consent clearly did not extend to a full-blown search of the interior and [containers found therein]. . . . We know of no case which has allowed police officers arbitrarily to expand the scope of a consent search.' "

Where the validity of the search is dependent on the consent of a defendant and the evidence shows without dispute that the scope of the search exceeded the scope of the consent, the search is unlawful. *Amato v. State*, 193 Ga. App. 459, 460 (388 SE2d 54). The basis for the search in this case was the consent given by the owner of the vehicle, Tanner, and it is plain that the officer's search of the closed container in the front seat exceeded the scope of the consent given by Tanner, and was unlawful.

*Judgment affirmed. Cooper, J., concurs. Pope, J., concurs specially.*

Pope, Judge, concurring specially.

While I agree with the result reached by the majority, I feel compelled to write separately to express my opinion that the *only* statement contained in the record, which justifies a finding that the defendant asserted a possessory interest in the contraband, is the testimony of the arresting officer that: "Mr. Corley later stated, during the time that they were sitting outside the vehicle, that Mr. Tanner didn't have anything to do with it, that it was his." When this statement is considered in context, it is probable that defendant was referring to the marijuana found in Mr. Tanner's truck. The other statements quoted in the majority opinion are either obviously sarcastic remarks or are otherwise irrelevant to the standing issue.

DECIDED SEPTEMBER 25, 1991.

*Keith C. Martin, Solicitor, Jackie N. Stanton, Assistant Solicitor*, for appellant.
*William E. Frey*, for appellee.