## A93A1914. BARRETT v. THE STATE.
### (443 SE2d 285)

SMITH, Judge.

Following the denial of his motion to suppress, Stuart Barrett entered a conditional nolo contendere plea satisfying the requirements of *Mims v. State*, 201 Ga. App. 277, 278-279 (1) (410 SE2d 824) (1991), on one count of possession of cocaine. He appeals, asserting that the physical evidence to be used against him at trial was seized illegally from his person, and therefore the trial court erred in ruling that evidence admissible. We agree.

A hearing was held on Barrett's motion, at which the following undisputed evidence was adduced. The Athens-Clarke County Police

Department received a call from the Goody's store in Athens stating that the occupants of two automobiles were suspected of shoplifting. The police had only a description of the vehicles and their license tag numbers. Soon thereafter Officer Gerald Carter spotted and stopped one of the automobiles in question. Barrett was the driver and sole occupant of that vehicle. Carter asked for Barrett's driver's license and insurance card. Barrett complied. At this time, Carter observed a plastic Goody's shopping bag on the passenger seat next to Barrett. Carter asked Barrett to step out of the vehicle, and Barrett complied. Carter testified that Barrett was cooperative and that Carter at that point had no articulable reason to fear him.

Two other officers, Dawson and Dearing, then arrived on the scene. Officer Dearing noticed a bulge in Barrett's left sock and asked Barrett what he was keeping there. Barrett replied that it was money, and in fact he pulled money from his sock. According to Dearing, a "little bulge" remained in Barrett's sock. Dearing testified that Officer Dawson then reached down and pulled a "little tubular thing" containing what appeared to be crack cocaine out of Barrett's sock. Officer Dearing testified that he did not believe anything else was said before Officer Dawson took the vial of crack from Barrett's sock.

Officer Dawson then took the stand. Dawson explained that once Barrett pulled the money out of his sock and the bulge remained, he "just made an effort to pull his sock down to check to see what it was because I was afraid that there might be some type of weapon or something in his sock at that time." It is uncontroverted that Barrett was given no further opportunity to explain the remaining bulge in his sock after the money was removed. Barrett was then arrested for possession of cocaine. He was thereafter returned to the Goody's store, where it was confirmed that the items in Barrett's shopping bag were not stolen. At the close of the motion hearing, the trial court found that the officers had a reasonable suspicion to stop Barrett's vehicle, and that they were then justified in "doing a limited *Terry* type pat down of his outer clothing" to check for weapons, or, alternatively, as incident to a lawful arrest. See generally *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). On that basis, Barrett's motion was denied.

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them. [Cits.]" *State v. Corley*, 201 Ga. App. 320 (411 SE2d 324) (1991).

The court found that a pat-down of Barrett's outer clothing was authorized. However, this finding is immaterial to any issue presented, since it is uncontroverted that no pat-down took place. The

State's own recitation of the facts makes this clear. The State admits that Dawson "attempted to determine whether or not the sock in fact contained a weapon by pulling the sock down." There is *no* evidence in the record to support the dissent's statement that Dawson gained information from "touching" the sock that authorized the removal of the vial. Instead, it is uncontroverted that Dawson's sole method of investigating the bulge in Barrett's sock was simply to remove the object contained in it, no matter what that object might be — hard or soft, threatening or nonthreatening, innocent or incriminating. And just as there is no evidence of a pat-down, there is likewise no evidence that any suspicions on Dawson's part were "confirmed," as the dissent states, by any act other than the search of Barrett's sock and the seizure of the vial of cocaine contained in it.

Also missing from the record is any evidence that the object contained in Barrett's sock "appeared to be a knife," that it "appeared to be a hard object," or even that it was a "pocket-knife-size bulge," as the dissent states. We likewise point out that the officer seizing the vial from Barrett's sock testified that he took this action because he was afraid that the object might be a weapon "or something." Clearly, this is not a case where it reasonably can be contended that no pat-down was necessary. The dissent claims that the officer was able to point to particular facts from which he "inferred" that Barrett was in fact armed and dangerous. On the contrary, Officer Dawson's *only* testimony to that effect was that he was afraid, by the very fact that the bulge existed, that it might be "a weapon or something." That alone might authorize a pat-down of Barrett's sock, but it does not authorize the officer to skip this vital step in the information-gathering process and proceed to search and seize whatever created the bulge in Barrett's sock.

The dissent erroneously suggests that Barrett admitted a pat-down "could have led the officer to believe that it was a pocket knife." The record does not support this; neither Barrett nor his counsel made such an acknowledgment. On the contrary, Barrett's counsel merely applied the law as he interpreted it, stating in closing argument: "At the most the police were justified in conducting a frisk of the person's exterior, a pat down. And at that point *if* they had deduced that what was in his shoe after the frisk . . . was a hard object *and* that it could be a weapon, at that point, and only at that point, would they have been justified in going in there." (Emphasis supplied.) This clearly does not support the notion that Barrett made the concession claimed by the dissent. The evidence more strongly suggests that a pat-down would merely have confirmed that the object in Barrett's sock was in fact cylindrical, and that it would not have felt at all like a pocketknife.

Finally, we make the obvious point that the vial in Barrett's sock

did not come into "plain view," as the dissent states, until the search and seizure had been completed. We do agree with the dissent, however, that *if* a pat-down had been done, and Officer Dawson reasonably believed afterwards that the object contained therein was a threat to his safety, then it "would have been foolhardy at best" to transport Barrett back to the Goody's store without further assurance that the sock did not in fact contain a weapon.

Based on the facts as they appear in the record and as presented by the State, the position taken by the dissent would authorize a police officer to search and seize any object which causes a detainee's clothing to bulge, regardless of whether a preliminary pat-down would have fully satisfied the officer's purported concern for his own safety. Moreover, the dissent does not anticipate the inevitable cases where the existence of a visible bulge is disputed.

The fact that Barrett was audacious and foolish enough to claim he thought the vial contained cornbread does not in any way strengthen the State's case, as the dissent apparently believes. Our decision is based solely on the case presented by the State. Barrett in no way contradicted the officers' admission that they investigated the bulge by searching and seizing the vial contained therein. We are aware of no case law standing for the proposition that Barrett waived his constitutional rights ex post facto by demonstrating a willingness to insult the intelligence of the court. We are likewise aware of no support for the dissent's proposition that a search of Barrett's sock is a proper method to form the very belief authorizing that search.

"In *Terry v. Ohio*, supra, the court's emphasis upon the procedures followed by the officer indicates that a two-step process must ordinarily be followed: (1) The officer *must pat down first*, and (2) *then* intrude beneath the surface *only* if he comes upon something which feels like a weapon. An officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel *like the object felt during the pat-down*." (Citations and punctuation omitted; emphasis supplied.) *Brown v. State*, 181 Ga. App. 768 (353 SE2d 572) (1987).

The dissent relies on *Hayes v. State*, 202 Ga. App. 204 (414 SE2d 321) (1991), for the proposition that an officer is not required under all circumstances to conduct a pat-down before intruding beneath the surface of a detainee's clothing. Id. at 208-209 (Beasley, J., concurring specially). We agree. However, "[u]nlike [*Hayes*], the State articulated [no] circumstances [here other than the existence of the 'little bulge' in Barrett's sock] that would have justified a police officer at the scene in suspecting that [Barrett] was armed and dangerous." Id. at 208. "Ordinarily the officer must pat down and then intrude be-

neath the surface only if he *confirms* his 'reasonable belief or suspicion' by coming upon something which *feels* like a weapon." (Emphasis supplied.) Id. at 208-209. In *Hayes*, the police officer reached into the suspect's pocket only after the suspect "refused to subject himself to a pat-down." Id. at 205. No similar exigent circumstances exist in the present case. The dissent directs us to no case where it is held that an officer may forego a preliminary pat-down even when the suspect is nonthreatening and makes no effort to resist the pat-down merely because the officer sees a bulge in the suspect's clothing.

The officers conducted no pat-down of Barrett's clothing whatsoever. This effectively precluded testimony regarding the officers' tactile impressions of the object concealed in Barrett's sock. There was also no testimony suggesting that the bulge in Barrett's sock clearly appeared to be a weapon of any specific type. Moreover, it is undisputed that Barrett's demeanor was nonthreatening and cooperative.

It is likewise undisputed that Barrett was not under lawful arrest when the vial of cocaine was taken from his sock. Officer Dawson conceded that "if we had not found anything at that point he could have left." It therefore appears that "no reasonable cause for defendant's arrest existed when the search was made, and since it was not made in connection with or as an incident to a lawful arrest, the search without a search warrant was itself unlawful. The motion to suppress should have been sustained. [Cit.] That unlawful drugs [were] discovered during the search . . . gave no cause for either the arrest or the search. [Cits.]" *Uva v. State*, 124 Ga. App. 486, 487 (184 SE2d 200) (1971).

The judgment denying the motion to suppress is reversed, and the case is remanded to allow Barrett to withdraw his plea and stand trial, if necessary, as agreed by the parties and approved by the trial court.

*Judgment reversed and remanded with direction. McMurray, P. J., Cooper, Johnson and Blackburn, JJ., concur. Pope, C. J., Birdsong, P. J., Beasley, P. J., and Andrews, J., dissent.*

BIRDSONG, Presiding Judge, dissenting.

Although concurring fully in the dissent, I write separately to express my view that the issue raised should not be addressed because appellant's plea of nolo contendere waived any issue about the denial of his motion. See *Hooten v. State*, 212 Ga. App. 770 (1) (442 SE2d 836) (1994). While *Hooten* is not yet in effect, this court has never expressly approved conditional pleas of nolo contendere (see *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (114 SE2d 529)), and we should no longer consider issues allegedly preserved by these pleas.

I respectfully dissent. I am authorized to state that Chief Judge

Pope and Judge Andrews join in this dissent.

BEASLEY, Presiding Judge, dissenting.

As the majority recognizes, quoting from *State v. Corley*, 201 Ga. App. 320 (411 SE2d 324) (1991), we take the trial court's findings of fact unless they are clearly erroneous. None of the trial court's findings are rejected by the majority, and I find no reason to differ in this regard.

In its order, the trial court stated its findings as follows: "The police officers had a reasonable and articulable suspicion to support the original traffic stop. Thereafter, the subsequent pat down of the Defendant's sock was reasonable to protect the safety of the officers. Conflicts in testimony were resolved adverse to the Defendant, who testified he thought the suspected contraband in his sock was 'corn-bread.' " What is inferred by the inclusion of the latter reference is made clear by what the court stated at the conclusion of the evidentiary hearing. The court revealed that defendant's testimony that he thought the vial contained cornbread helped the court resolve the conflict in the evidence, thus indicating the court's rejection of defendant's explanation as unworthy of belief. Defendant had testified that the friend who had bought the merchandise in the Goody's bag and inadvertently left it on the passenger's seat, had dropped the vial when leaving Goody's; that defendant picked it up and was going to return it to him and, when he saw officer Carter signaling him to stop, put the vial in his sock.

The court used the term "pat-down" in a broad sense, as there was no actual preliminary laying on of hands to determine if defendant carried an object which could be a weapon. Such physical investigatory touching of all of the suspect's clothing to determine if he was armed, a greater intrusion than what transpired, was not necessary in this case, because the officers could see that a hard object was still concealed in defendant's sock after he removed a roll of four or five bills. The object was three to four inches long and one-half to one inch in diameter, about the size of a Life Saver holder.

1. The question is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968). The officer was "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U. S. 40, 64 (88 SC 1889, 20 LE2d 917) (1968). The evidence supported the trial court's finding that the information the officer had when he touched and searched the sock warranted a person of reasonable caution to believe that the sock contained a weapon. As repeated in *Roberts v. State*, 193 Ga. App. 96, 98-99 (386 SE2d 921) (1989), the particular facts and circum-

stances of each case must be weighed.

Defendant acknowledged to the court below that frisking or patting down that area of defendant's sock-covered anatomy could have led the officer to believe that it was a pocketknife; his argument was that the officer did not first feel it. However, touching the sock in the area of the object, in order to retrieve it, instantly confirmed to the officer that it was a long hard object, just as he had visually observed, before he removed it. A pat-down or tactile inquiry for the purpose of ascertaining whether defendant possessed what an officer would reasonably believe was a weapon on defendant's person was not necessary when touching confirmed what the officer already knew, from sight, was an object which appeared to be a knife. *"Terry v. Ohio*, [supra,] is not authority for the proposition that an officer who has effectuated an investigatory stop of a potentially armed individual is necessarily limited, under *all* circumstances, to conducting a patdown. To the contrary, *Terry* merely held that it was not unreasonable for an officer to have conducted a pat-down of a potentially armed suspect who had actually submitted to that procedure." *Hayes v. State*, 202 Ga. App. 204, 206 (414 SE2d 321) (1991).

When the car was stopped which fit the description and had the license number of one involved in the suspected shoplifting and the officer saw the bag from the reported victim store, the intent was formed for Officer Carter to take defendant back to the store in furtherance of the investigation. He did not know if defendant was armed, and when Officer Dawson saw that a bulge remained after defendant removed his money, he feared he had a weapon. It would have been foolhardy at best for Carter to transport defendant back to Goody's without the assurance that the pocketknife-size bulge in defendant's sock was not that. Not OCGA § 17-5-30, not Paragraph 13 of the Georgia Bill of Rights, not the Fourth Amendment, require such peril. The Supreme Court has "recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Michigan v. Long*, 463 U. S. 1032, 1047 (III) (103 SC 3469, 77 LE2d 1201) (1983). The officer's action was reasonable, and that is the touchstone. *Michigan v. Long*, supra at 1051.

Then when he saw, not a knife, but the plastic tube with what appeared to be crack cocaine in plain view, he was authorized to seize it.

2. Defendant also claims that this evidence was obtained in a manner which violated his right against self-incrimination under Paragraph 16 of the Georgia Bill of Rights. Non-resistance or passive resistance to the search would not constitute a violation of the prohibition against compelling a person "to give testimony tending in any manner to be self-incriminating." This fundamental right is not im-

plicated in these circumstances. He was not compelled to do an act which produced the evidence; he did not yield the vial but rather refused or at least declined to do so. *Creamer v. State*, 229 Ga. 511 (2) (192 SE2d 350) (1972); *State v. Armstead*, 152 Ga. App. 56 (1) (262 SE2d 233) (1979). See *Ingram v. State*, 253 Ga. 622, 634 (7) (323 SE2d 801) (1984).

I am authorized to state that Chief Judge Pope and Presiding Judge Birdsong join in this dissent.

DECIDED MARCH 18, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994 —

*Russell C. Gabriel*, for appellant.
*Harry N. Gordon, District Attorney, J. Mark Hatfield, Assistant District Attorney*, for appellee.