## A01A1239. STANFORD v. THE STATE.
(553 SE2d 622)

PHIPPS, Judge.

Jimmy Stanford was convicted at a bench trial of trafficking in cocaine and sentenced to serve twenty-five years in confinement and five years on probation. He appeals his conviction and sentence. Stanford claims that the trial court erred by denying his motion to suppress because the informant relied upon by police did not know that Stanford had cocaine in his car. Stanford also claims that the trial court erred by sentencing him as a recidivist because the State failed to serve his attorney with notice of its intent to use prior convictions in aggravation of his sentence. Finding no error, we affirm.

At the hearing on Stanford's motion to suppress, Michael Ray, a former narcotics investigator with the Spalding County Sheriff's Office, testified that on June 18, 1998, at 9:00 p.m. he received a telephone call from a confidential reliable informant. Ray testified on direct examination that the informant told him that Stanford would be at the bowling alley on Bowling Lane in approximately 20 minutes, that he would be driving a very clean early 1970s model white Cadillac, and that he would be in possession of a large quantity of

---

cocaine. On cross-examination, Ray admitted that the informant had not told him that he knew cocaine was in the car. Instead, the informant had told him that, prior to calling Ray, he had ordered cocaine from Stanford. The informant had previously told Ray that he had been buying drugs from Stanford for over a year and that Stanford had never failed to show up with the drugs. Ray testified that the informant had given him information in the past that had led to at least three arrests and one conviction for narcotics violations.

Ray testified that after receiving the informant's tip, he notified other officers, including Officer Ranieri, who went to the bowling alley and set up surveillance. Ranieri told Ray that he saw a very clean early 1970s model white Cadillac with a black vinyl top drive into the bowling alley parking lot at approximately 9:25 p.m. Ranieri told Ray that the car went through the bowling alley parking lot, through a nearby car wash and back through the parking lot before exiting on Bowling Lane. Ranieri and Officers Bauch and Ray followed the car out of the parking lot. Shortly thereafter, Bauch conducted a traffic stop of Stanford's car. As Ranieri walked toward the car, Stanford made a motion toward the armrest in the center of the front seat. The officers removed Stanford from the car, and Ray performed an immediate search of his body for weapons. Ray also searched under the armrest and found several bags of cocaine. He arrested Stanford at approximately 9:30 p.m.

Stanford testified at the motion to suppress hearing that he had not received any calls that day but had received only a "beep," which provided him with a telephone number to call. He also testified that he did not own the car he was driving and that he did not know how the drugs got in the car.

1. Stanford claims that the trial court erred by denying his motion to suppress because the officers lacked probable cause for the search. He argues that the informant lacked knowledge that he would be in possession of any drugs.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe

the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that search warrants be supported by probable cause. The United States Supreme Court has long recognized an exception to the warrant requirement for searching an automobile.[2] The ready mobility of an automobile and the fact that the expectation of privacy with respect to one's automobile are significantly less than that relating to one's home or office justify a warrantless search, if based upon probable cause.[3]

The basis for the search of Stanford's car was the informant's tip and the officers' corroboration of certain details of that tip.

> The sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability[, such as corroboration by the personal observation of a police officer].[4]

Here, the informant had some basis for his knowledge — he had ordered cocaine from Stanford that day and expected him to show up with the drugs, as he had always done in the course of their dealings over the past year. As for the informant's reliability, Ray testified that the informant had given him information in the past that had led to at least three arrests and one conviction for narcotics violations. He did not, however, give any indication as to when or over what period of time the information was given. But there were other indicia of the tip's reliability. The officers corroborated the tip in several respects: Stanford was observed driving an automobile of the same description given by the informant to the location supplied by the informant and within close proximity of the time the informant predicted.[5] In addition, after he was stopped, Stanford made a furtive

---

[1] (Citations omitted.) *Edgerton v. State*, 237 Ga. App. 786, 787 (516 SE2d 830) (1999).

[2] *Carroll v. United States*, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925).

[3] *California v. Carney*, 471 U. S. 386, 390-393 (105 SC 2066, 85 LE2d 406) (1985).

[4] (Citations and punctuation omitted.) *Rucker v. State*, 199 Ga. App. 854, 855 (406 SE2d 277) (1991).

[5] See *Meadows v. State*, 247 Ga. App. 634, 636-637 (1) (545 SE2d 76) (2001).

move toward the armrest, further indicating that the informant's tip was correct.[6] All of this evidence, taken together, was sufficient to establish probable cause for a warrantless search of Stanford's car.[7] We find no error in the trial court's denial of Stanford's motion to suppress.

2. Stanford argues that the trial court erred by sentencing him as a recidivist because the State failed to serve his attorney with notice of its intent to use prior convictions in aggravation of his sentence.

The record shows that on April 13, 1999, the State filed and served by mail on Stanford's appointed counsel a "Notice of Prior Convictions to be Used in Aggravation of Sentencing," which describes Stanford's two prior convictions for violations of the Georgia Controlled Substances Act. Stanford later retained counsel, who argued at sentencing that he had no prior notice of the State's intent to introduce prior convictions in aggravation of sentencing because the notice was not served on him. The record shows that Stanford's retained counsel made his first appearance in the case on April 30, 1999. Thereafter, the State served him with all documents filed with the court.

OCGA § 17-10-2 requires "clear notice" to an accused or his attorney of all previous convictions that the State intends to introduce at trial "to allow a defendant to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the pre-sentencing phase of the trial."[8] Although Stanford's retained counsel claims that he did not receive notice of the State's intent to use prior convictions, the notice was served properly upon Stanford's then counsel of record. OCGA § 17-1-1 provides that all pleadings, orders and motions subsequent to the indictment shall be served upon the party's attorney by delivering a copy to him or mailing it to him at his last known address. We know of no requirement that the State serve subsequent counsel with an additional copy of the notice. Thus, service was lawfully accomplished.[9]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

---

[6] See *State v. Burnett*, 249 Ga. App. 334, 337 (2) (548 SE2d 443) (2001) (furtive behavior not only validates a tip but is another factor to be considered in determining whether probable cause exists).

[7] See *Archer v. State*, 217 Ga. App. 395, 396-397 (457 SE2d 679) (1995) (confirmed tip from informant of previously unconfirmed reliability provided police with probable cause to effectuate an investigatory stop and warrantless search of defendant's moving vehicle).

[8] *Herring v. State*, 238 Ga. 288, 290 (4) (232 SE2d 826) (1977); *Gates v. State*, 229 Ga. 796, 797 (4) (194 SE2d 412) (1972).

[9] See *Cabell v. State*, 250 Ga. App. 530 (551 SE2d 386) (2001).

DECIDED AUGUST 6, 2001.

*Cramer & Peavy, Timothy C. Cramer*, for appellant.

*William T. McBroom III, District Attorney, Robert H. English, Assistant District Attorney*, for appellee.