A05A1915. MEGESI v. THE STATE.
(627 SE2d 814)

BARNES, Judge.

After his conviction following a stipulated bench trial, Brad Joseph Megesi appeals his conviction for possession of marijuana[1] and the denial of his motion to suppress. His sole enumeration is that the trial court erred by denying his motion to suppress evidence of a marijuana cigarette seized from the ashtray of his automobile during a traffic stop. The question we address here is whether the officer's entry into Megesi's vehicle during a routine traffic stop to secure a weapon was lawful under the principles of the Fourth Amendment. We conclude that, under the circumstances of this case, the officer was authorized to reach into the passenger compartment of the vehicle to retrieve the pistol in the interest of his own safety. Therefore, the marijuana cigarette the officer discovered was in plain view and subject to seizure. Accordingly, we affirm both the denial of Megesi's motion to suppress and his conviction.

Viewed in the light most favorable to the verdict, the record shows that a police officer stopped Megesi's SUV at 3:35 a.m. on Interstate 75 after clocking its speed with a laser device at 97 miles per hour in a posted 55 miles per hour zone.[2] When the officer

---

[1] Although he was also convicted of speeding, Megesi has not appealed that conviction and sentence.

[2] In his appellant's brief, Megesi concedes that this stop was lawful.

approached the vehicle, he smelled burned marijuana inside the vehicle. Megesi informed the officer that he possessed a handgun in the car, for which he had a lawful permit.

The officer then instructed Megesi to exit his SUV so that he could take possession of the weapon for his safety. Once Megesi was outside of his car, the officer could see the weapon, a 9 mm pistol, between the driver's seat and the center console. He then reached into the vehicle and took possession of the pistol.

While reaching into the vehicle to secure the weapon, the officer saw what appeared to be a burned marijuana cigarette in an open ashtray. Although he could not confirm that it was marijuana at that time, the officer believed it was because he had smelled burned marijuana before and had seen similar cigarettes hundreds of times.[3]

The officer, however, did not immediately seize the marijuana cigarette. Instead, he asked Megesi if any drugs were in the vehicle. Megesi said no and told the officer to search the vehicle. The officer entered the vehicle, retrieved the marijuana cigarette, and then placed Megesi under arrest.

The officer testified that he did not feel he was in jeopardy from or apprehensive of Megesi, and that Megesi made no sudden moves and did not make him feel uncomfortable or threatened. He further testified that his training directed him, for his safety, to take possession of any handgun present until he finished with the traffic stop. Megesi presented no evidence at the hearing.

The trial court found that the officer's actions did not constitute a search and did not violate Megesi's constitutional rights. Instead, the officer's limited intrusion into the vehicle was to protect his safety, and he lawfully seized the marijuana cigarette in plain view.

On appeal Megesi contends the trial court erred by denying his motion to suppress the evidence. First, he claims that the officer's initial search of his vehicle to retrieve the firearm was illegal because smelling burned marijuana does not constitute probable cause for a warrantless search. Second, Megesi argues that the officer had no legal reason to seize the weapon because Megesi had exited the vehicle and the weapon was neither contraband nor being used in a threatening manner. Essentially, he contends that because there was no evidence that he posed a danger to the officer, his Fourth Amendment rights were infringed when the officer entered the vehicle to retrieve the weapon.

When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court. *Stanford v. State*, 251 Ga. App. 87, 89 (1)

---

[3] Drug testing confirmed his belief.

(553 SE2d 622) (2001). The trial court's findings on disputed facts and credibility are adopted "unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." *Barrett v. State*, 212 Ga. App. 745, 746 (443 SE2d 285) (1994). Further, as the evidence in this appeal is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

1. Megesi first contends that the officer's initial search of his vehicle to retrieve the firearm was unauthorized because smelling burned marijuana does not provide reasonable suspicion or probable cause to justify a warrantless search. Whether this proposition is correct or not, the record shows that the officer did not enter the SUV because he smelled burned marijuana, but reached into it to secure the pistol. Thus, any issue concerning whether the odor of burned marijuana provided sufficient probable cause to search the vehicle is irrelevant because the officer had another lawful basis to enter Megesi's vehicle.

2. Megesi next argues that the officer had no legal justification for reaching in his vehicle and seizing the weapon because Megesi had exited the vehicle, the weapon was not contraband, and it was not being used in a threatening manner. The issue presented here is whether it is permissible under our federal and state Constitutions for an officer involved in a traffic stop to temporarily take physical possession of a firearm in a vehicle even though the driver has not given the officer reason to think he is dangerous. We conclude that our Constitutions permit such a practice.

During a valid traffic stop, an officer may order both the driver and the passengers from the car. *Maryland v. Wilson*, 519 U. S. 408, 415 (117 SC 882, 137 LE2d 41) (1997). A valid vehicle stop based on reasonable suspicion does not automatically give the police permission to search the passenger compartment for weapons. *Michigan v. Long*, 463 U. S. 1032, 1049, n. 14 (103 SC 3469, 77 LE2d 1201) (1983). An officer may, however, conduct a limited search of a suspect for dangerous weapons if the officer reasonably believes that the detainee is presently armed and dangerous because "it is unreasonable to prevent the police from taking reasonable steps to protect their safety." Id. at 1052. Such a search must be limited in scope to protecting the officer by disarming a potentially dangerous person. Id. at 1050, n. 14. In *Adams v. Williams*, 407 U. S. 143, 146 (92 SC 1921, 32 LE2d 612) (1972), the United States Supreme Court described this procedure as "a limited protective search for concealed weapons."

This type of limited intrusion is justified by the particular hazards confronting a police officer in roadside encounters with

drivers and passengers. *Long*, supra, 463 U. S. at 1048. Even though the officer has physical control of the suspect, the suspect could still break away from police control and retrieve the weapon from his automobile, or would have access to the weapon if permitted to return to his car before the investigatory stop is over. Id. at 1051-1052.

In *Pennsylvania v. Mimms*, 434 U. S. 106, 110 (98 SC 330, 54 LE2d 331) (1977), the United States Supreme Court recognized concern for officer safety may legitimately justify procedures designed to protect those officers during roadside stops.

> Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. Indeed, it appears that a significant percentage of murders of police officers occurs when the officers are making traffic stops.

(Citation and punctuation omitted.) Id. In view of these factors, the Court in *Pennsylvania v. Mimms* held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Id. at 111, n. 6.

In *Michigan v. Long*, supra, the court extended the *Terry* principles applicable to a stop-and-frisk to protective searches of automobiles. *Long*, supra, 463 U. S. at 1049. The Court further stated that "[i]n evaluating the validity of an officer's investigative or protective conduct under *Terry* the touchstone of [its] analysis is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." (Citation and punctuation omitted.) Id. at 1051.

With these principles in mind, we find that in this case, the protective seizure of the handgun from the vehicle's passenger compartment was authorized. This was not a search to determine whether a weapon was present; the officer knew that a weapon was present because Megesi told him so, and after Megesi got out of the vehicle, the officer could see the pistol, which he then secured for his personal safety. Moreover, we note that an officer securing a weapon during a

traffic stop, under these circumstances, does not significantly lengthen the traffic stop or increase the degree of privacy intrusion.

Even though *Terry* and its successors authorized searches for weapons only when the officers had the reasonable belief that the suspect was potentially dangerous, the officer's actual knowledge that a weapon was present alters the basic formula. The presence of an unsecured weapon creates an inherently dangerous situation that authorizes the officer to take protective measures to secure the weapon.

Therefore, the relevant independent fact necessary to decide the question presented here is that Megesi informed the officer that he had a weapon in the car. The officer's seizure of the pistol from inside Megesi's vehicle was permissible because he knew from Megesi's own words and from his own observation that the pistol was there. Moreover, even if the officer had assumed that Megesi had a lawful gun permit, the United States Supreme Court has expressly rejected the view that the validity of a *Terry* search depends on whether the weapon is possessed legally. See *Adams v. Williams*, supra, 407 U. S. at 146. " '(I)nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers.' *Michigan v. Long*, [supra, 463 U. S. at 1047 (III)]." *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004).

Therefore, we hold that when an officer is informed during a traffic stop that a weapon, licensed or otherwise, is in the vehicle, the officer may secure the weapon for his protection. Regardless of whether this particular officer felt personally threatened, a reasonably prudent man in the officer's position would be warranted in believing that, because of the weapon's presence, his safety was in danger while he executed the roadside stop. See *Allison v. State*, 188 Ga. App. 460 (373 SE2d 273) (1988) (physical precedent only) ("The appellant's voluntary admission of possession of a deadly weapon per se provided for a limited intrusion under the seat of appellant's motorcycle. Such an intrusion at that point obviously was necessary for the protection of the officers.").

Because the officer was reaching into the vehicle for the authorized purpose of securing the weapon when he saw in plain sight the marijuana cigarette in the ashtray, he could lawfully seize it without a search warrant under the "plain view" doctrine. The plain view doctrine supports a warrantless seizure in these circumstances. *State v. Webb*, 193 Ga. App. 2, 4 (2) (386 SE2d 891) (1989); *Griffin v. State*, 180 Ga. App. 189, 190 (348 SE2d 577) (1986).

Accordingly, the trial court did not err by denying Megesi's motion to suppress.

*Judgment affirmed. Johnson, P. J., concurs. Ruffin, C. J., concurs specially.*

RUFFIN, Chief Judge, concurring specially.

Although I agree with the result reached, I am unable to agree with the analysis employed. I do not think law enforcement officers should be given carte blanche authority to "secure" all weapons during a routine traffic stop. Where, as here, the suspect was outside of the car, beyond the reach of the weapon, and the arresting officer testified that he did not feel threatened by the suspect, I see no need to permit the officer to enter the car to retrieve the gun.

Nonetheless, I believe the trial court properly denied Megesi's motion to suppress. When the law enforcement officer approached the car, he smelled marijuana which, at a bare minimum, gave him reasonable suspicion to question Megesi about the presence of drugs.[4] And although the officer reached into the car to retrieve the gun, he did not seize the marijuana cigarette at that point. Rather, after observing the contraband, he asked Megesi "if there were any drugs inside the vehicle." In response, Megesi indicated there were no drugs in the car, and he invited the officer to search the car. It was only then that the officer retrieved the marijuana cigarette from the car. By issuing the invitation to search his car, Megesi consented to the officer's conduct.[5] Since I see this as clearly a consent case, I see no need to expand Fourth Amendment jurisprudence in the manner advocated by the majority.

DECIDED FEBRUARY 15, 2006 —
RECONSIDERATION DENIED MARCH 3, 2006 — 

*Sexton & Morris, Ricky W. Morris, Jr.,* for appellant.
*Leslie Miller-Terry, Solicitor-General, Janet Smith-Taylor, Assistant Solicitor-General,* for appellee.

---

[4] See *State v. Charles,* 264 Ga. App. 874, 876 (2) (592 SE2d 518) (2003) ("Georgia appellate courts have clearly held that the odor of marijuana emanating from a car, in and of itself, provides a law enforcement officer with a reasonable suspicion that marijuana is present.").

[5] See *Pierce v. State,* 274 Ga. App. 670, 671 (1) (618 SE2d 700) (2005); *Parker v. State,* 234 Ga. App. 26 (1) (506 SE2d 191) (1998) ("The arresting officer's testimony that Parker invited him to search the car is sufficient to support a finding of consent.").