## 76587. WILLIAMS v. THE STATE.
(370 SE2d 497)

BANKE, Presiding Judge.

The appellant was stopped by a Georgia State trooper while driving a rented van on I-75 near Dalton, Georgia, and was given a warning ticket for speeding. Thereafter, the trooper conducted a search of the van pursuant to a written consent form signed by appellant authorizing the search. The search resulted in the seizure of a kilogram of cocaine as well as a quantity of marijuana; and the appellant was subsequently convicted of trafficking in cocaine, possession of marijuana, and speeding. In this appeal from the denial of his motion for new trial, he contends that the trial court erred in denying his motion

to suppress the contraband as the fruit of an unlawful search and also in allowing the state to bring to the jury's attention the fact that he had invoked his right to counsel following his arrest.

The stop occurred at approximately 3:00 a.m. on October 22, 1986. Although the trooper who made the stop was on routine patrol duty at the time, he had been assigned, as part of a State Patrol program known as "Operation Nighthawk," to concentrate his efforts on interstate highway drug interdiction; and his interest in stopping the van was clearly attributable, at least in part, to his observation of information appearing on its license plate indicating that it was a rental vehicle from the Miami, Florida, metropolitan area. The trooper was in fact accompanied at the time of the arrest by a reporter from *USA Today*, who was riding in the patrol car with the consent of the State Patrol for the express purpose of obtaining information for an article on interstate highway drug arrests.

After stopping the van and speaking briefly with the appellant, the trooper spoke with a passenger seated in the front seat. At this time, the trooper "smelled an odor of burnt marijuana coming from inside the vehicle" and observed, from the passenger's glazed physical appearance and the slowness of his responses, that he seemed to be "under the influence of some intoxicant." Also, the trooper observed that the passenger was making an apparent effort to conceal a brown box located under his seat and further noted, upon questioning him, that some of his responses concerning the nature of his trip appeared inconsistent with those previously elicited from the appellant on the subject. The trooper then issued the appellant a warning ticket for speeding and asked him to consent in writing to a search of the vehicle. Following a brief discussion with the appellant concerning his alternatives in this regard, which was recorded on tape via a remote microphone being worn by the trooper, the appellant executed the consent form. During the ensuing search of the vehicle, marijuana was discovered inside the brown box which the trooper had previously noticed under the passenger's seat, and cocaine was discovered inside a cardboard box bearing the appellant's name located in the rear of the van. *Held*:

1. The appellant contends that the initial detention of the van was unlawful because the speeding violation was utilized as a mere pretext for the trooper's actual intention, which, from the outset, was to conduct a search for drugs. It may indeed be inferred from the evidence presented at the hearing on the motion to suppress that the trooper would not have stopped the van for speeding but for his suspicion that it might be transporting illicit drugs. However, it is further apparent that the trooper formed the belief that the van was exceeding the speed limit immediately upon his initial observance of it and that he proceeded forthwith to confirm this belief by clocking

it with his patrol car. Thus, there is no question that the trooper was relying at all times on the speeding violation as his authorization for making the stop. The trial judge concluded that under such circumstances the trooper's conduct could not be considered violative of the Fourth Amendment merely because he had been influenced by his "acute awareness for drug courier activities." We agree. A rule requiring a law enforcement officer to *forego* making a traffic stop which he would otherwise be authorized to make merely because he suspects that the vehicle might be engaged in the transport of illicit drugs would have little to commend it, and we have previously declined the invitation to create such a rule. See *Coop v. State*, 186 Ga. App. 578 (367 SE2d 836) (1988); *Eisenberger v. State*, 177 Ga. App. 673 (340 SE2d 232) (1986).

The appellant relies upon *United States v. Smith*, 799 F2d 704, 709 (11th Cir. 1986), for the proposition that a search will be considered unreasonably pretextual unless "a reasonable officer *would* have made the stop in the absence of the invalid purpose." The stop at issue in *Smith* was not predicated on an observed traffic violation, as was the stop in this case, but on "inarticulate hunches" arising from completely lawful activity. Specifically, the defendants in that case were stopped because they "matched a few nondistinguishing characteristics contained on a drug courier profile," and because the driver had avoided looking at the trooper upon passing him. While the trooper testified that he had observed the appellants' vehicle "weaving" after he began following it, he acknowledged that he had, by that time, already decided to make an investigative stop of the vehicle, id. at 706; and the Court specifically held that he did not have probable cause to stop the car for any traffic violation. Id. at 708.

We find nothing in the *Smith* decision which would suggest that an officer is precluded from stopping a vehicle for an observed traffic violation if he is motivated by a suspicion, itself insufficient to justify an investigatory stop, that the vehicle might be transporting drugs. In fact, the Court emphasized in *Smith* that the officer's actual state of mind was irrelevant to the legality of the stop, holding that such an assessment must always be based on objective criteria. Id. at 709.

It being undisputed in the present case that the stop of the appellant's vehicle was predicated on an actual, observed speeding violation, we hold that the trial court did not err in concluding that the stop was lawful.

2. The appellant further contends that even if the initial stop was lawful the search was not, because the trooper induced him to sign the consent form by deceiving him as to the scope and intensity of the proposed search. As previously indicated, the discussion between the appellant and the trooper which preceded the signing of the consent form was recorded on tape, so there is no question about

what actually transpired. Although the trooper initially told the appellant that he merely wanted "to look in the van real quick," he then proceeded to read the consent form to the appellant, and the form unambiguously authorized a "complete search" of the vehicle and its contents. Evidently understanding this, the appellant thereupon expressed reservations about signing the form and asked what would happen if he refused. The trooper responded that in such an event he would *attempt* to obtain a search warrant, adding that "it would take me a few minutes to see whether or not I can obtain one." The trooper repeatedly assured the appellant that he was not required to sign the form; and, indeed, his last words to the appellant before the appellant signed were, "You don't have to but I'd appreciate it." On the basis of this conversation, the trial court was quite clearly authorized to conclude that the appellant had consented to the search freely and voluntarily and that he had not been induced to sign the form by the use of coercion, duress, or deception. Accord *Fuller v. State*, 165 Ga. App. 55 (1) (299 SE2d 397) (1983); *Jones v. State*, 154 Ga. App. 21 (1) (267 SE2d 323) (1980).

We additionally note that the trial court did not uphold the search solely on the ground that it was consensual but further concluded that the trooper already had probable cause to conduct a search of the vehicle at the time the consent was given, "because of the smell of marijuana connected with the other characteristics observed and the totality of the circumstances." Based on the trooper's perception of the passenger's physical appearance, the passenger's furtive conduct with respect to the brown box, and the inconsistencies between the passenger's responses and those the appellant had given concerning the nature of their trip, we concluded that this assessment was correct. Accord *Brooker v. State*, 164 Ga. App. 775 (1) (298 SE2d 48) (1982); *Holmes v. State*, 163 Ga. App. 753 (294 SE2d 719) (1982). Accordingly, we hold that the trial court did not err in denying the appellant's motion to suppress.

3. While it is true that the state emphasized to the jury the fact that the appellant had requested an attorney upon being informed of his *Miranda* rights, it was shown that the appellant had thereafter made certain spontaneous statements which could be viewed as incriminatory. The state's introduction of these statements into evidence necessarily brought into question the issue of their voluntariness, with the result that the circumstances under which they were made became a proper subject for the jury's consideration. Cf. *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). At the conclusion of the trial, the jury was specifically charged that the appellant's invocation of his right to talk with an attorney was pertinent solely to the issue of the voluntariness of any statements he might have made while he was in custody and could not be considered

as evidence of his guilt or innocence. Consequently, we find the appellant's final enumeration of error also to be without merit.

*Judgment affirmed. Birdsong, C. J., and Beasley, J., concur.*

DECIDED MAY 16, 1988 —
REHEARING DENIED JUNE 3, 1988 — 

*Robert W. Ritchie, Marcus R. Morris,* for appellant.
*Jack O. Partain III, District Attorney, Lee R. Taylor, Assistant District Attorney,* for appellee.