A07A2054. THE STATE v. JONES.
(657 SE2d 253)

SMITH, Presiding Judge.

The State appeals from the trial court's grant of Dennis Alan Jones's motion to suppress. The trial court correctly found that the officer lacked a reasonable, articulable suspicion to seize a firearm in Jones's vehicle. We therefore affirm.

We must follow three principles when reviewing a trial court's order concerning a motion to suppress evidence:

First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe

---

the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted.) *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004). So viewed, the evidence shows that a City of Cedartown police officer stopped Jones's vehicle because its tag light was out. The officer later added on cross-examination that he observed Jones weaving, but he acknowledged that once he spoke with Jones he concluded he was not under the influence.[1] The officer asked for and received Jones's license, but he did not check it immediately because he saw a hunting rifle in the cab of Jones's pickup truck. Instead, for that reason, he asked Jones to step out of the vehicle.

Although the officer testified that Jones consented to a pat-down of his person, Jones testified that the officer did not ask permission but simply began to pat him down. The officer acknowledged that he found nothing in the pat-down search. The officer then told Jones he "had to look at the gun." Jones, feeling that he did not have "any choice at that point," told the officer, "Do what you've got to do." Although he did not need to do so to reach the firearm, the officer entered the truck and moved some clothes partially covering the rifle, exposing the contraband that forms the basis of Jones's motion to suppress.

The officer did not testify to any suspicious conduct or furtive movement on the part of Jones at any time, and he testified repeatedly that he was not in fear of any aggressive action. The officer candidly stated that he had a "standard procedure" of securing any firearm he saw in a vehicle during a traffic stop, because "several times" he had found a stolen gun in a vehicle. He had, however, no reason to believe that this particular hunting rifle was stolen.

The trial court granted the motion to suppress from the bench, explaining that the State had failed to show any legal justification for the officer's insistence on seizing Jones's firearm. We agree.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive

---

[1] The officer testified that no video of the traffic stop existed because he had inadvertently destroyed the tape.

police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.

(Citations omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002). Here, the officer had taken Jones's license and did not return it until after he had asked Jones to step out of the truck and completed the search. This therefore was a second-tier encounter. *Ward v. State*, 277 Ga. App. 790, 792 (627 SE2d 862) (2006). In such a case, the officer must have a "particularized and objective basis for suspecting the persons are involved in criminal activity. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citation, punctuation and footnote omitted.) Id.

Those facts are lacking here. The officer asserted that he stopped Jones because he suspected he might be DUI, but he quickly concluded that Jones was not intoxicated. The officer also testified that he did not fear for his safety, but asked to look at the rifle in the truck purely as a standard practice to see if it might be stolen. The officer therefore lacked justification to detain Jones, and his subsequent search was likewise unjustified. *Ward*, supra, 277 Ga. App. at 793.

The State argues that *Megesi v. State*, 277 Ga. App. 855 (627 SE2d 814) (2006) (physical precedent only), justifies the seizure of the rifle. But, as the trial court noted, that decision is physical precedent only. In fact, the special concurrence in *Megesi* explicitly disclaims the notion that the presence of a visible firearm in a vehicle, without more, justifies a search. Id. at 860. This comports with the United States Supreme Court's directive:

[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous *and* the suspect may gain immediate control of weapons.

(Citations and footnote omitted; emphasis supplied.) *Michigan v. Long*, 463 U. S. 1032, 1049 (103 SC 3469, 77 LE2d 1201) (1983).[2]

Georgia decisions agree that in order to justify a search of a vehicle for weapons, some conduct on the part of the occupants such as furtive movements or other indications of danger to the officer must be shown, and the officer must have an "objectively reasonable" belief that the occupants of a vehicle are "potentially dangerous." *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004) (driver leaned under seat as if to conceal weapon and drove recklessly while in that position, then offered implausible explanation for his conduct). Here, no evidence was presented of furtive movements or danger; in fact, the officer candidly acknowledged that the search was merely his standard procedure because any firearm might be stolen. On its face, as noted by Jones, this policy justifies the search of any vehicle occupied by hunters or sport shooters with their firearms, or any pickup truck with a rifle or shotgun on the rear window rack. This is precisely the danger of "carte blanche authority to 'secure' all weapons during a routine traffic stop," noted by the special concurrence in *Megesi*, supra, 277 Ga. App. at 860.

The State also argues that Jones consented to the seizure of his rifle. But "[i]t is well settled that acquiescence cannot substitute for free consent. [Cits.]" *Corley v. State*, 236 Ga. App. 302, 306-307 (1) (b) (512 SE2d 41) (1999). Accordingly, we conclude that the trial court properly granted Jones's motion to suppress.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED JANUARY 11, 2008.

*Donald N. Wilson, District Attorney, Melisa A. Mason, Assistant District Attorney*, for appellant.

*David L. Smith*, for appellee.

---

[2] *Megesi*, while citing *Michigan v. Long*, does not follow this clear direction.