A08A1785. BELL v. THE STATE.
A08A1786. WINKLER v. THE STATE.

(672 SE2d 675)

DOYLE, Judge.

Following our grant of their applications for interlocutory appeal, John David Bell and Carl Winkler appeal the trial court's order denying their motions to suppress evidence seized from Bell's automobile following a traffic stop. We reverse because the officers' search of Bell's vehicle for weapons was not justified under the circumstances.

1. Winkler first argues that the trial court's approval of the State's previous motion to enter nolle prosequi precluded the State from contesting the motion to suppress. We disagree.

On September 20, 2007, the prosecutor moved to enter nolle prosequi on the charges against Winkler on the grounds that the

"State could not prevail on a [m]otion to [s]uppress," and the trial court granted the motion. Winkler was re-indicted the following month. Winkler contends that the State was therefore barred from contesting his motion to suppress. However, the trial court made no decision on the merits by granting the motion to enter nolle prosequi.[1] Rather,

> [t]he entry of nolle prosequi does not act as an acquittal or bar future prosecution for the same offense. Thus, an order of nolle prosequi is not necessarily the ending of the prosecution, but the continuance of the same as the State clearly has the authority to re-indict the defendant for the same offense.[2]

Accordingly, the State was not barred from contesting the merits of Winkler's motion to suppress.

2. Although the trial court correctly concluded that the State had not previously conceded the merits, we agree with Bell and Winkler that the trial court erred in failing to grant their motions to suppress.[3]

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous."[4] However, the facts in this case are not disputed, and there is no issue of witness credibility. In such cases, "the trial court's application of the law to undisputed facts is subject to de novo review."[5]

So viewed, the evidence shows that Bell and his passenger, Winkler, were stopped by Catoosa County Sheriff's officers for traveling 39 mph in a 25 mph zone. An officer asked Bell about his speeding, his driver's license, and his insurance. According to the officer, Bell was "very nervous," looking ahead and refusing to make

---

[1] See *McGahee v. State*, 133 Ga. App. 964, 966 (3) (213 SE2d 91) (1975) ("[a] new indictment may be returned or a new accusation may be filed, and the earlier nolle prosequi can *in no sense* be pleaded as autrefois acquit or former jeopardy, or res judicata") (emphasis supplied).

[2] (Citation and punctuation omitted.) *Buice v. State*, 239 Ga. App. 52, 53 (1) (520 SE2d 258) (1999).

[3] The State does not raise the issue of Winkler's standing to seek suppression of the evidence. We note that "[a]lthough a passenger, [Winkler] has standing to challenge his detention as part of the traffic stop and to seek the suppression of drug evidence obtained as a result of his alleged illegal detention." *Woodard v. State*, 289 Ga. App. 643, 646 (1), n. 2 (658 SE2d 129) (2008).

[4] (Citation, punctuation and footnote omitted.) *State v. Mallard*, 246 Ga. App. 357 (541 SE2d 46) (2000).

[5] (Citation and footnote omitted.) Id.

eye contact. Meanwhile, a second officer spoke with Winkler, who also refused to make eye contact. It appeared to the first officer that Bell was "under the influence of some type of drug." The indicia of drug use, according to the officer, was that Bell had a "very dry mouth" and that his eyes appeared to be "slightly closed," more so than a person who was not intoxicated.

Due to these indicators, Bell's nervousness, and his failure to look at the officer, the officer asked for Bell's consent to search the vehicle. Bell refused. The officer then requested that a K-9 unit be dispatched to the scene from another county.

After asking for the K-9 unit, the officers decided to take Bell and Winkler out of the automobile. According to the first officer, he had noticed an expandable baton in a cup holder beside the driver when he initially approached the vehicle. He testified that these ASP batons are carried by police officers and are deadly weapons. The officer "ordered [Bell and Winkler] out of the vehicle to get them away from the weapon because we were going to be there a longer time than what I originally expected." He decided to perform "a wing span search for any other weapons that may be there due to the fact we were going to be there an extended period of time." When asked on cross-examination if Bell and Winkler were a threat, the officer indicated that they would have been a threat if left in the vehicle, but he further testified that "I couldn't very well search the vehicle with them sitting in it. If I reached over them, they could grab my firearm."

After Bell and Winkler exited the vehicle, the officers patted them down for weapons, finding none, and then searched the vehicle for weapons. Under the seat and console, the officers found a black bag. Inside the bag were scales and suspected methamphetamine. At that point, the focus of the search changed from weapons to drugs, and the officers found additional suspected contraband inside the false compartment of a water bottle located under the passenger seat.

> *Terry v. Ohio*[6] recognizes that although a police officer may not have probable cause to arrest someone, if there is a reasonable suspicion of criminal wrongdoing, based upon specific and articulable facts from which it can be determined that the action of the police officer is not arbitrary or harassing, the police officer may make a brief, investigatory detention of the individual in order to determine his iden-

---

6 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

tity or to maintain the status quo momentarily while obtaining more information.[7]

In this case, the officers were authorized to stop Bell's vehicle upon observing the speeding violation.[8] However, the officers continued to detain Bell and Winkler after an officer had asked Bell about the speeding, his license, and insurance, and Bell refused to consent to a search of his vehicle.[9] As a rule, "if the officer *continues to detain* the subject after the conclusion of the traffic stop . . . without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop."[10] Pretermitting whether the officers had a particularized and objective basis for suspecting that Bell was driving under the influence, we note that the officers performed no sobriety tests whatsoever and did not detain Bell to perform a DUI investigation. The first officer testified, "I was not looking to make a DUI charge. I was more interested in why they were so nervous on a traffic stop that only involved a slight speeding charge."

The officer agreed that "because of the nervousness [he] wanted to investigate further and find out if there was something other than the speeding ticket." However, nervousness alone cannot provide reasonable suspicion of criminal activity.[11] Nor did Bell's dry mouth constitute a particularized and objective basis for officers to suspect he possessed contraband.[12] Accordingly, we conclude that the officers impermissibly exceeded the scope of the initial traffic stop when, due to suspicions raised by Bell's nervousness, they detained Bell and Winkler to await the arrival of the K-9 unit from another county.[13]

---

[7] (Citation omitted.) *Hamm v. State*, 259 Ga. App. 412, 413 (577 SE2d 85) (2003).

[8] See *Williams v. State*, 187 Ga. App. 409, 410-411 (1) (370 SE2d 497) (1988) (officer authorized to stop speeding automobile, notwithstanding that he may have harbored suspicions of drug transportation insufficient in themselves to justify an investigatory stop).

[9] See *Migliore v. State*, 240 Ga. App. 783, 784 (525 SE2d 166) (1999) ("an officer who questions and detains a suspect for other reasons exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity") (punctuation and footnote omitted).

[10] (Punctuation and footnote omitted; emphasis in original.) *Bennett v. State*, 285 Ga. App. 796, 798 (648 SE2d 126) (2007). Although the officer's request for consent to search may not have unreasonably prolonged the detention, see generally *Hayes v. State*, 292 Ga. App. 724, 726 (665 SE2d 422) (2008), it was after Bell's refusal to give consent that the officer asked for the K-9 unit, pulled Bell and Walker out of the vehicle, and conducted the search.

[11] See *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002).

[12] See *State v. Habib*, 260 Ga. App. 229, 231 (1) (581 SE2d 576) (2003).

[13] See *State v. Blair*, 239 Ga. App. 340, 342 (521 SE2d 380) (1999) (affirming grant of motion to suppress where "officer abandoned [registration and license] investigation and detained the occupants of the car in order to conduct a search for drugs").

The search of the vehicle was conducted after Bell and Winkler were illegally detained and was therefore unjustified.[14]

The State contends that the presence of a weapon in Bell's vehicle nevertheless authorized the search. We disagree. In the context of a *Terry* stop, "[t]he sole justification of [a *Terry*] search is the protection of the police officer and others nearby."[15] The search of an automobile's passenger compartment,

> limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.[16]

> Georgia decisions agree that in order to justify a search of a vehicle for weapons, some conduct on the part of the occupants such as furtive movements or other indications of danger to the officer must be shown, and the officer must have an "objectively reasonable" belief that the occupants of a vehicle are "potentially dangerous."[17]

The evidence fails to show that officers observed any conduct on the part of Bell and Winkler, furtive or otherwise, that would cause them to reasonably believe that they were dangerous. Further, the presence of the baton in plain view did not itself authorize the search of Bell's vehicle. We recently concluded that an officer could not, as a matter of standard practice, seize a rifle in a vehicle to see if it might be stolen, noting that such a policy would improperly "justif[y] the search of any vehicle occupied by hunters or sport shooters with their firearms, or any pickup truck with a rifle or shotgun on the rear window rack."[18] Similarly, to allow the search of Bell's vehicle merely because a baton was present would arguably allow police to search the vehicle of any speeding motorist whose child left a baseball bat in

---

[14] See *Ward v. State*, 277 Ga. App. 790, 791-793 (627 SE2d 862) (2006) (although suspect consented to pat-down for officer's safety and further consented to a search of her pocket, during which contraband was discovered, the officer was not authorized to detain the suspect in a second-tier detention and the search was not justified).

[15] (Punctuation omitted.) *Michigan v. Long*, 463 U. S. 1032, 1050, n. 14 (103 SC 3469, 77 LE2d 1201) (1983).

[16] (Punctuation omitted.) Id. at 1049.

[17] *State v. Jones*, 289 Ga. App. 176, 179 (657 SE2d 253) (2008). See, e.g., *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004) (suspect acted suspiciously by concealing an object under the passenger seat).

[18] *Jones*, supra, 289 Ga. App. at 179.

the back seat.

*Megesi v. State*,[19] to the extent that it is inconsistent with our analysis, is physical precedent and not controlling.[20] Furthermore, *Megesi* is distinguishable in that it provided only that where informed of the presence of a weapon, "the officer may secure the weapon for his protection,"[21] while the search at issue here went beyond the officers' seizure of the baton. *Newby v. State*,[22] and *State v. Jarrells*,[23] relied on by the State, do not demand a different result. In *Newby*, police had specific and articulable facts to suspect that the occupants of the car were dangerous and could gain control of a weapon "[s]ince appellant was a suspect in several armed robberies, including one occurring a few minutes earlier."[24] In *Jarrells*, we remanded the case for a determination by the trial court of whether police had conducted a valid weapons search of the appellee's vehicle,[25] noting that such a search is premised on an officer's "reasonable belief, based on specific and articulable facts and rational inferences from those facts, that the occupant(s) of the automobile are dangerous *and* may gain immediate control of a weapon."[26] Here, the evidence demonstrates that the officers lacked a reasonable belief, based on specific and articulable facts, that Bell and Winkler were dangerous.[27] It follows that the trial court erred in denying their motions to suppress.[28]

*Judgment reversed. Andrews, P. J., and Bernes, J., concur.*

DECIDED JANUARY 21, 2009.

*Thomas D. Weldon, Jr., Shawn D. Bible*, for appellant (case no. A08A1785).

*Jad B. Johnson, David J. Dunn, Jr.*, for appellant (case no. A08A1786).

*Herbert E. Franklin, Jr.*, District Attorney, *Bruce E. Roberts*,

---

[19] 277 Ga. App. 855 (627 SE2d 814) (2006).

[20] See Court of Appeals Rule 33 (a) ("an opinion is physical precedent only with respect to any Division of the opinion for which there is a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said").

[21] *Megesi*, supra, 277 Ga. App. at 859 (2). The weapon at issue in *Megesi* was a firearm.

[22] 178 Ga. App. 891 (345 SE2d 102) (1986).

[23] 207 Ga. App. 192 (427 SE2d 568) (1993).

[24] 178 Ga. App. at 892 (2).

[25] 207 Ga. App. at 193 (4).

[26] (Citation and punctuation omitted; emphasis supplied.) Id. at 193 (3).

[27] Although we noted in *Jarrells* that " '[i]t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed,' " (citation omitted) id. at 193 (4), the officers in this case did not have a reasonable basis to suspect either Bell or Winkler were involved in the drug trade.

[28] See *Jones*, supra, 289 Ga. App. at 178-179.

*Assistant District Attorney*, for appellee.