**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 12, 2013**

# In the Court of Appeals of Georgia

A13A0387. WALKER v. THE STATE.

BRANCH, Judge.

Xavier Deval Walker was tried by an Oconee County jury and convicted of trafficking in cocaine,[1] obstruction of a law enforcement officer,[2] and a violation of Georgia's window tint statute.[3] He now appeals from the denial of his motion for a new trial, asserting that the court below erred in denying his motion to suppress evidence obtained during what Walker contends was an illegal traffic stop. We find no error and affirm.

---

[1] OCGA § 16-13-31 (a) (1).

[2] OCGA § 16-10-24 (a).

[3] OCGA § 40-8-73.1 (b) (2).

At a hearing on a motion to suppress, the trial judge sits as the trier of fact. *Gonzalez v. State*, 299 Ga. App. 777, 778 (1) (683 SE2d 878) (2009). On appeal from the grant or denial of such a motion, therefore, this Court

> must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. However, we owe no deference to the trial court's conclusions of law and are instead free to apply anew the legal principles to the facts.

(Punctuation and footnotes omitted.) *State v. Able*, ___ Ga. App. ___ (Case No. A13A0653, decided April 24, 2013).

Viewed in the light most favorable to the trial court's ruling, the record shows that Georgia State Patrol Corporal Charles Chapeau is assigned to the GSP's Criminal Interdiction Unit. On November 26, 2009, Chapeau was contacted by a DEA agent associated with a regional drug task force in the metropolitan Atlanta area. The DEA agent informed Chapeau that while conducting surveillance on a suspected drug trafficker, task force agents had observed the suspect meeting with an unknown man at a restaurant in Conyers. Agents ran the license plate of the Toyota Scion driven by the unknown man and learned that the car was registered to Walker at an Athens

2

address. The DEA agent also told Chapeau that at some point the task force might need his assistance in stopping the car.

The following day, the DEA agent contacted Chapeau again and informed him that agents believed that Walker was driving the Scion from Athens to Atlanta. The DEA agent provided Chapeau with a complete description of the car and its license plate number. Chapeau was then in contact with other task force officers who stated that they would be stationed in Monroe and would be looking for the Scion as it traveled through that area. These officers subsequently contacted Chapeau and informed him Walker's car had passed through Monroe, was traveling on Highway 78, and that the officers were following behind it. The officers also conveyed to Chapeau that the window tint on the Scion appeared to be darker than the legal limit.

In response to this information, Chapeau proceeded to Highway 78 in the Lawrenceville area, stationed his patrol car in the median, and began a look-out for Walker's car. As the Scion passed in front of him, Chapeau could not see the driver through the car's windows, even though the patrol car's headlights shone directly on the Scion. Based on his training and experience,[4] Chapeau concluded that the window

---

[4] Chapeau's experience included his 13 years as a state patrol officer, as well as time spent during his high school and college years working at a business that tinted car windows.

3

tint on Walker's car was darker than the legal limit, and he therefore initiated a traffic stop of the vehicle.[5]

Chapeau directed Walker to exit his car and come to the side of the road, between the Scion and the patrol car. The officer then explained to Walker the reason for the traffic stop. According to Chapeau, Walker seemed to be "overly nervous," so he began making small talk with Walker in an effort to get Walker to relax. During this initial conversation, Chapeau realized that he was wearing a portable radio that only worked in Atlanta, where he had been earlier that day. Chapeau therefore returned to his patrol car and retrieved a portable radio that worked in the Lawrenceville area. Chapeau testified that he paused his encounter with Walker and changed radios for personal safety reasons, as he was the only officer at the scene.

After changing radios, Chapeau returned to where Walker was standing and began to write out a warning ticket for the window tint violation. As he wrote the warning, Chapeau continued to question Walker about things that were unrelated to the tint of his car windows, and at one point asked if he could search Walker's car. Walker declined the request and Chapeau, who had not yet completed writing the

---

[5] There is no video tape of he traffic stop because the recorder in Chapeau's patrol car had run out of tape before Chapeau initiated the stop. Chapeau did not realize this fact until after the traffic stop had been completed.

4

warning, returned to his patrol car to retrieve the equipment he used to measure window tint. As Chapeau walked back towards his vehicle, Walker entered the Scion through the front passenger door, retrieved a package from underneath the driver's seat, and fled through the driver's door with the package. Chapeau attempted to stop Walker after he re-entered the Scion by firing taser darts at him, but was unsuccessful.

As Walker exited the Scion, the package broke and a substance that appeared to be cocaine spilled out. Walker fled down Highway 78 on foot and was apprehended by the drug task force officers who had followed his car from Monroe. A total of ten minutes elapsed from the time Chapeau initiated the traffic stop and the time Chapeau informed dispatch that Walker had been taken into custody. A test performed on the Scion's windows following Walker's arrest showed that the window tint was illegal.[6]

On appeal, Walker contends that the trial court erred in denying his motion to suppress the evidence obtained as a result of the traffic stop because Chapeau lacked a legal basis for the stop. He further asserts that even if the initial stop was legal,

---

[6] Under OCGA § 40-8-73.1 (b) (2), it is illegal for window tint to "reduce light transmission through the windshield or window to less than 32 percent, plus or minus 3 percent." The window tint on the Scion reduced the light transmission through the window to 4 percent.

Chapeau illegally prolonged his detention. We find no merit in either of these assertions.

1. Walker first argues that the stop of his car was illegal, because Chapeau was using the alleged window tint violation as a pretext for the traffic stop in the hopes of finding drugs. This argument finds no support in the law.

In *Whren v. United States*, 517 U. S. 806 (116 SCt 1769, 135 LEd2d 89) (1996), the United States Supreme Court held that when an officer witnesses a traffic offense, the resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop. Thus, where a traffic stop is based on a police officer's observation of "even a minor traffic violation, a suppression motion arguing that the stop was pretextual must fail." (Punctuation and footnote omitted) *Quick v. State*, 279 Ga. App. 835, 837 (632 SE2d 742) (2006). See also *Somesso v. State*, 288 Ga. App. 291, 294 (2) (b) (653 SE2d 855) (2007) ("the standard for measuring pretextual stops is" whether the officer had a valid basis for the stop, "not whether the officer's primary motivation for stopping a car was to interdict drugs") (footnote omitted).

Here, the evidence showed that Chapeau stopped Walker's car because he believed (correctly) that the car's window tint violated state law. And because the

officer had a valid basis for the stopping of Walker's car, that stop did not violate the Fourth Amendment. *Quick*, supra. See also *Gonzalez*, supra at 778 (1) (rejecting defendant's argument that the stop of his car for a traffic violation was illegal "because officers followed him with the admitted intent of stopping him for a traffic violation so that they could conduct a drug investigation").

2. Walker further argues that even if the initial stop of his car was legal, by the time police discovered the cocaine the stop had evolved into an illegal detention. Again, we disagree.

As a general rule, an officer who has initiated a valid traffic stop may detain the driver only so long as is necessary to accomplish the purpose of the stop. *Young v. State*, 310 Ga. App. 270, 272 (712 SE2d 652) (2011) ("[o]nce a valid traffic stop has been effected, the Fourth Amendment prohibits the officer from unreasonably prolonging the stop beyond the time required to fulfill the purpose of the stop"). Thus, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (125 SCt 834, 160 LEd2d 842) (2005).

In this case, Walker contends that Chapeau illegally prolonged the traffic stop by requiring him to exit the car; asking him a number of questions that were unrelated to the window tint violation; interrupting the writing of the warning to change his portable radio; and delaying the retrieval of his window tint testing equipment until several minutes into the stop. This evidence, however, does not demand a finding that Chapeau illegally prolonged Walker's detention.

A police officer's request that a driver exit his car to speak with the officer represents a legitimate "extension of the constitutionally valid detention resulting from [a] traffic stop." *Salmeron v. State*, 280 Ga. 735, 737 (1) (632 SE2d 645) (2006). Additionally, "so long as the questioning does not unreasonably prolong the detention[,]" an officer may "question the vehicle's driver . . . during the course of the stop, and even . . . ask questions unrelated to the purpose of a valid traffic stop." (Punctuation and footnote omitted.) *Young*, supra at 272-273 (footnote and punctuation omitted). In determining whether such questioning impermissibly prolonged a traffic stop, "the dispositive factor . . . is not the nature or subject of the officer's questioning, but whether that questioning took place during [the driver's] otherwise lawful detention for committing the traffic violations in the officer's presence." *Salmeron*, supra at 736 (1). Similarly, any other incidental conduct of the

8

officer, such as retrieving necessary items from his patrol car, will not impermissibly prolong the stop and result in an illegal detention as long as the officer is working to accomplish the purpose of the traffic stop. Id. at 736. See also *Young*, supra at 272 ("a reasonable time to conduct a traffic stop includes the time necessary for the officer to run a computer check on the validity of the driver's license and registration, and to check for outstanding warrants and/or criminal histories on the driver and other occupants") (footnotes omitted).

Here, Chapeau testified that all of the "delaying" conduct that Walker complains of, including the questions unrelated to the window tint, the changing of his portable radio, and the attempted retrieval of his window tint testing equipment, occurred during the time Chapeau was obtaining the information necessary to complete the warning he planned to issue Walker. In its order denying the motion to suppress, the trial court specifically found Chapeau's testimony on these issues credible, and we are bound by that finding. "It was for the trial court, sitting as finder of fact, to gauge the credibility of the officer's testimony," including his testimony that all of the conduct at issue occurred as a necessary part of citing Walker for a window tint violation. (Citation omitted.) *Warren v. State*, 314 Ga. App. 477, 482 (3) (724 SE2d 404) (2012). See also *Hayes v. State*, 292 Ga. App. 724, 724 (665 SE2d

9

422) (2008) (in reviewing a trial court's order on a motion to suppress, this Court "cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision") (footnote and punctuation omitted). Given this evidence, the trial court did not err in finding that the traffic stop was not impermissibly prolonged and that therefore Walker was not illegally detained. See *Salmeron*, supra at 736 (1); *Bell v. State*, 295 Ga. App. 607, 610 (2) (672 SE2d 675) (2009) (an illegal detention occurs only where the "officer *continues to detain* the subject after the conclusion of the traffic stop without reasonable suspicion of criminal activity") (punctuation and footnote omitted; emphasis in original).

*Judgment affirmed. Ellington, C. J., concurs and Phipps, P. J., concurs in judgment only.*