**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 19, 2014**

# In the Court of Appeals of Georgia

A13A1817. THE STATE v. SNEAD.                    DO-068 C

DOYLE, Presiding Judge.

Jeffrey Brian Snead was charged with possession of a controlled substance[1] and possession of a firearm during the commission of a felony.[2] Snead filed a motion to suppress the evidence based on an illegal search of his vehicle,[3] and the trial court granted the motion. The State appeals, arguing that the trial court erred by granting Snead's motion to suppress. For the reasons that follow, we reverse.

---

[1] OCGA § 16-13-30 (a).

[2] OCGA § 16-11-106 (b) (4).

[3] We note that the motion itself contains only a general allegation that the search of the automobile was conducted without a warrant and was therefore unconstitutional. Snead amended his motion to state that the vehicle was searched after Snead was removed from it and without any lawful basis for doing so.

In *Miller v. State*,[4] the Georgia Supreme Court reiterated three fundamental principles which must be followed when conducting an appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and [the] findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.[5]

So viewed, the record shows that on July 26, 2011, a report of a suspicious vehicle was made to the Gwinnett County Police Department. The caller reported that a white pickup truck was parked near an intersection with the door open, and the caller was concerned because the vehicle had not left for some time.

When the officers arrived, they observed that the truck was parked near other vehicles at a multi-family residence near the side of the road. Snead was lying across

___

[4] 288 Ga. 286 (702 SE2d 888) (2010).

[5] (Punctuation and citation omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013).

the seat of the truck when the officers approached, and he leaned over to close the open vehicle door after being awoken by the officer's headlights. The first officer on the scene was Jonathan Hensley, who testified that he approached the truck from the driver's side and asked Snead what he was doing, to which Snead responded that he was visiting a friend.

Officer Hensley noticed that Snead appeared to be impaired, was jittery and visibly shaking during the encounter, seemed confused, and had thick and slurred speech. While speaking with Snead, Officer Hensley noticed an empty gun holster tucked above the seat of the truck. Officer Hensley asked Snead if he had a weapon in the vehicle based on his observation of the holster, but Snead stated that the holster belonged to a friend, and that no weapon was in the vehicle.

During Officer's Hensley's conversation with Snead, Officer Michael Croyle arrived on the scene and approached the truck from the passenger's side of the vehicle. As he looked into the open, passenger-side window of the truck, Officer Croyle observed a silver handgun beside Snead's hand, in a location that would not be visible to Officer Hensley, and Officer Croyle called out the officer code word to alert Officer Hensley of the weapon's existence. At that point, Snead grabbed the weapon by the handle with his finger in the trigger guard, and both officers drew their

3

service weapons and commanded Snead to drop the weapon. Officer Hensley testified, "both of us drew our weapons because we didn't know what he was doing. We didn't know if he was going to shoot someone or what. Obviously, that's a kind of hostile motion to pick up a gun in the presence of two cops for what appeared to be no reason." Snead dropped the weapon, and Officer Hensley removed Snead from the vehicle from the driver's side and walked him to the rear of the vehicle, but did not cuff him. Officer Hensley testified that while he had Snead outside the vehicle, Officer Croyle then entered the vehicle "to secure the weapon" so that "it was no longer an issue as to what was going on."

Officer Croyle, on the other hand, testified that as he was outside the vehicle, he saw a pipe containing what appeared to be marijuana residue on the seat by the firearm, and a spoon with what appeared to be a white powdery substance on the floorboard next to the area of the seat upon which the gun and pipe were located. Officer Croyle testified that he then opened the passenger-side door to retrieve the contraband pipe and spoon, and he searched the passenger compartment of the vehicle, finding in the glovebox several needles, small baggies, and empty prescription bottles, one of which contained an Oxycodone pill.

After the hearing on the motion to suppress, the trial court granted the motion, finding that Officer Croyle was not authorized to open the passenger door of the vehicle to secure the weapon and finding that the drug paraphernalia was not in plain view from outside the vehicle.

The U. S. Supreme Court has explained that an officer is authorized to perform a warrantless search of the passenger compartment of an automobile, inter alia, when (1) "an arrestee is within reaching distance of a vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest"; (2) the officer has a reasonable suspicion that the occupant, whether an arrestee or not, is "'dangerous' and might access the vehicle to gain immediate control of weapons"; or (3) "there is probable cause to believe that the vehicle contains evidence of criminal activity."[6]

In its order, the trial court stated that "there were several conflicts in the testimony of the officers,[7] especially as it related to the issue of whether contraband

_____

[6] *Arizona v. Gant*, 556 U. S. 332, 346-347 (IV) (129 SCt 1710, 173 LE2d 485) (2009). See also *Boykins v. State*, 290 Ga. 71, 73 (2) (717 SE2d 474) (2011).

[7] We note that the conflicts in the testimony found in the trial court's order consist of (1) the discrepancy of the timing of when Officer Croyle noticed the weapon beside Snead — Officer Hensley testified it "was within [five] seconds" of Officer Croyle approaching the vehicle, and Officer Croyle testified that it "was within a minute"; and (2) the discrepancy of the number of times Snead was told to drop the weapon once he picked it up — Officer Hensley testified that he "did so

5

was in plain view such that Officer Croyle would have had probable cause to search the vehicle." The Court further stated that

> [a]fter observing both officers testify and judging the credibility of the officers, the Court finds that Officer Hensley's testimony was most credible. The Court finds as a matter of fact[] that contraband was not observed prior to the vehicle door being opened by Officer Croyle and his search thereafter. Therefore, the Court finds that probable cause was lacking to authorize the search of the Defendant's vehicle.
>
> The Court finds that at the time Officer Hensley removed the Defendant from the truck and escorted him to the back of the truck, there was no longer any danger posed by the unconcealed gun; there had been no crime committed[,] and there were no exigent circumstances that would justify Officer Croyle opening the passenger door of the truck, nor that would justify a warrantless search of the vehicle. There was no lawful basis for the warrantless search and seizure.

Thus, the trial court found not credible Officer Croyle's testimony that he viewed the pipe and spoon from outside the vehicle before opening the passenger door, and it concluded that the officer was not authorized to open the vehicle door.

---

immediately," and Officer Croyle testified that "it took several commands before [he] complied." We note that Officer Hensley testified to how many times that *he* ordered Snead to comply and did not testify to how many times Officer Croyle ordered Snead to comply.

Although this Court may have found otherwise in the trial court's position, it is not the function of this Court to second guess the credibility determinations of the trial court.[8]

Nevertheless, the trial court erred by finding that Officer Croyle was not authorized to open the passenger door of the vehicle in order to secure the weapon simply because Snead had been removed from the interior of the vehicle. Officer Hensley, the officer whom the trial court found more credible, testified that Snead was not handcuffed while Officer Croyle was opening the passenger-side door to retrieve the weapon, and that Officer Croyle's act of doing so was "simultaneous" to Hensley's removal of Snead from the truck. But even accepting the trial court's finding that Officer Hensley had removed Snead to the rear of the vehicle by the time Croyle opened the door and secured the weapon, Officer Croyle was authorized to secure the weapon for both the officers' safety because Snead was not handcuffed[9] at that point according to Officer Hensley.[10]

---

[8] See *Brown*, 293 Ga. at 802-803 (3).

[9] The trial court did not make an explicit finding regarding whether Snead was handcuffed prior to the entry into the vehicle.

[10] See *Culpepper v. State*, 312 Ga. App. 115, 121-122 (717 SE2d 698) (2011). See also *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004), quoting *Michigan*

Moreover, *Michigan v. Long*,[11] and its progeny authorized Officer Croyle to perform a further search of the passenger compartment of the vehicle for other weapons, independent of whether any drug paraphernalia was in plain view.[12] Although the trial court found that Officer Croyle entered the vehicle to seize the pipe and spoon,[13] the entry into the vehicle was authorized to secure the known weapon and conduct a *Terry*-style protective sweep for others, and the officer's potentially ulterior motive of searching for contraband does not play a part in our Fourth

---

*v. Long*, 463 U. S. 1032, 1047 (III) (103 SCt 3469, 77 LEd2d 1201) (1983) ("[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers."); *Megesi v. State*, 277 Ga. App. 855, 857-859 (2) (627 SE2d 814) (2006) (physical precedent only).

[11] 463 U. S. at 1049-1050 (III) (holding that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger") (punctuation omitted).

[12] See *Gant*, 556 U. S. at 346-347 (IV); *Boykins v. State*, 290 Ga. at 73 (2).

[13] Officer Hensley, who the court noted was "more credible," testified that Officer Croyle opened the passenger door to secure the weapon while Hensley was detaining Snead outside the vehicle.

Amendment analysis.[14] The testimony of both officers that Snead had to be told to drop the weapon while both officers had their service weapons drawn and pointed at him, regardless of whether he had to be told once or twice, removes this from the line of cases in which officers did not have the appropriate reasonable belief to support entering the vehicle to secure a weapon and complete a search of the passenger compartment on the basis of officer security.[15] When Officer Croyle "discover[ed] contraband other than weapons, he [was not] required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."[16]

*Judgment reversed. McFadden and Boggs, JJ., concur.*

---

[14] See *Cotton v. State*, 237 Ga. App. 18 (513 SE2d 763) (1999). See also *Whren v. United States*, 517 U. S. 806, 813 (II) (A) (116 SCt 1769, 135 LE2d 89) (1996) ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (punctuation omitted)

[15] Compare with *Bell v. State*, 295 Ga. App. 607, 611 (2) (672 SE2d 675) (2009), *Doyle, J. authoring*, (no furtive movements by the occupant or other indications of danger to an officer which would justify a search for weapons in a limited area in which a weapon may be placed or hidden); *State v. Jones*, 289 Ga. App. 176, 178-179 (657 SE2d 253) (2008) (affirming trial court's order suppressing a reasonable articulable suspicion to seize a firearm from the defendant's vehicle based on the mere existence of the weapon in the vehicle without more).

[16] *Long*, 463 U. S. at 1050. See *Culpepper*, 312 Ga. App. at 121-122; *Silva*, 278 Ga. at 508-509; *Megesi*, 277 Ga. App. at 857-859 (2).

9