**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 16, 2025**

# In the Court of Appeals of Georgia

A25A1115. AYALA v. THE STATE.

MCFADDEN, Presiding Judge.

Alejandro Ayala, who was indicted for trafficking methamphetamine and other drug offenses, moved to suppress evidence seized from his vehicle during a traffic stop and evidence seized from a house pursuant to a search warrant. After an evidentiary hearing, the trial court denied the motion to suppress in an order containing no express findings of fact. The court issued a certificate of immediate review, we granted Ayala's application for interlocutory appeal, and this appeal followed.

Ayala argues that the traffic stop was unlawful and that the search warrant was not supported by probable cause. But because the traffic stop was for an alleged traffic violation observed by officers and was not unreasonably prolonged, it was lawful. And

because Ayala has shown no ownership or possessory interest in the house, he lacks standing to challenge the search warrant. So we affirm.

1. *Facts*

Where the trial court has not made express findings of fact after a hearing on a motion to suppress, we "construe the evidence most favorably to uphold the trial court's judgment." *Jones v. State*, 314 Ga. 605, 609 (878 SE2d 505) (2022) (citation and punctuation omitted). So construed, the evidence presented at the motion to suppress hearing showed that in December 2021 a sheriff's investigator followed a pickup truck with a North Carolina tag when it left a suspected drug house in Georgia. While following the truck, the investigator saw the driver fail to maintain his lane multiple times. The investigator, who was in an unmarked vehicle, contacted the local police department and asked for an officer to make a traffic stop of the vehicle. The investigator watched as a police officer pulled the truck over into a store parking lot and he saw a K-9 unit arrive on the scene within five minutes

The officer who initiated the stop testified that he heard on his radio that investigators had observed traffic violations, that he followed the truck and also observed the driver failing to maintain his lane, and that he was aware a K-9 unit had

already been requested. After making the stop, the officer approached the truck and spoke to the driver, who was identified as Ayala. The officer asked Ayala for his driver's license and told him that he had been stopped for failure to maintain his lane. Ayala replied that he had been avoiding potholes.

The officer returned to his patrol vehicle to check Ayala's driver's license. A backup officer arrived at the scene, began speaking to Ayala, and had him get out of his vehicle. The first officer determined through radio dispatch that Ayala's license was valid. The officer subsequently requested that the backup officer ask Ayala if the address listed on his license was still current, which was necessary information for the written warning that the officer later wrote.

A few seconds after confirming the address, and approximately eight minutes after the truck was stopped, the K-9 unit conducted an open-air sniff around Ayala's truck and the drug dog alerted to the presence of drugs. Officers searched the vehicle, found suspected methamphetamine, and arrested Ayala. The sheriff's investigator then obtained a search warrant for the house, which was later executed.

2. *Traffic stop*

Ayala contends that the traffic stop was unlawful because it was an unauthorized pretextual stop that was improperly prolonged. We disagree.

(a) *Traffic violation*

"It is well established that a [traffic] stop is authorized if the officer observes a traffic violation." *Chapman v. State*, 368 Ga. App. 682, 684 (1) (890 SE2d 313) (2023) (citation and punctuation omitted).

> In *Whren v. United States*, 517 U. S. 806 (116 SCt 1769, 135 LE2d 89) (1996), the United States Supreme Court held that when an officer witnesses a traffic offense, the resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop. Thus, where a traffic stop is based on a police officer's observation of even a minor traffic violation, a suppression motion arguing that the stop was pretextual must fail.

*Walker v. State*, 322 Ga. App. 821, 824 (1) (744 SE2d 385) (2013) (citation and punctuation omitted).

In this case, the police officer "observed what he believed to be a [lane] violation . . . of OCGA § 40-[6-48 (1) ('[a] vehicle shall be driven as nearly as practicable entirely within a single lane'). Because the] officer witnesse[d] a traffic violation, the ensuing stop [was not] pretextual, regardless of the officer's subjective intentions." *State v. Price*, 322 Ga. App. 778, 780 (746 SE2d 258) (2013) (citation and

4

punctuation omitted). Rather, "[t]he officer's observation of even this minor traffic violation constituted a valid basis for the stop." *Loveless v. State*, 337 Ga. App. 894, 897 (1) (789 SE2d 244) (2016).

Ayala notes that in *Chapman*, supra at 685 (1), we held that "a motorist does not violate OCGA § 40-6-48 (1) when he drives on, but does not cross over, a fog line." Ayala then claims that some of the officer's testimony shows that Ayala drove on, but did not cross, the line of the lane he was in, so there was no actual violation observed by the officer. But pretermitting the issue of whether the trial court, as fact-finder, could have construed the totality of the officer's testimony as showing the observation of a lane violation, Ayala's reliance on *Chapman* is misplaced since it actually supports the validity of the traffic stop in this case. As we explained in *Chapman*,

> until our holdings in *Lute* [*v. State*, 368 Ga. App. 70, 72 (2) (889 SE2d 195) (2023) (no failure to maintain lane where defendant weaved within his lane and touched the lane lines)], and this case, Georgia's law was genuinely ambiguous as to whether driving on a fog line amounts to a failure to maintain one's lane. Consequently, [the officer's] mistaken belief that such conduct violates the law was objectively reasonable, and the traffic stop in this case was justified.

*Chapman*, supra at 686 (1).

The traffic stop in this case occurred in 2021, prior to *Chapman* and *Lute*, which were both decided in 2023. So as held in *Chapman*, even if the officer in the instant case mistakenly believed that Ayala's conduct violated the law, given Georgia's genuinely ambiguous law at that time about what constituted failure to maintain a lane, such a mistake was objectively reasonable and the stop was justified. See *Chapman*, supra at 685 (1) (when an officer mistakenly believes that certain conduct violates the law, the observation of that conduct can serve as reasonable suspicion if the officer's mistake of law was objectively reasonable).

Furthermore, independent of the officer's own observations, he was authorized to stop Ayala based on the collective knowledge of law enforcement officers providing reasonable, articulable suspicion that Ayala had committed traffic violations. See *Hall v. State*, 351 Ga. App. 695, 700 (1) (832 SE2d 669) (2019) ("reasonable, articulable suspicion need not be based on an arresting officer's knowledge alone, but may exist based on the collective knowledge of the police when there is reliable communication between an officer supplying the information and an officer acting on that information") (citation and punctuation omitted). As set out above, the sheriff's investigator testified that he observed Ayala fail to maintain his lane numerous times

6

before requesting that a traffic stop be initiated. And the officer who initiated the stop testified that he heard over his police radio that investigators had observed traffic violations. So the traffic stop was valid based on the collective knowledge of the officers. See *Wilson v. State*, 318 Ga. App. 59, 62 (1) (733 SE2d 365) (2012) ("The stop of a vehicle is authorized if the officer observes a traffic offense. Probable cause may be established based on the collective knowledge of the communicating officers.") (citations and punctuation omitted); *Weldon v. State*, 291 Ga. App. 309, 311-312 (661 SE2d 672) (2008) (holding traffic stop lawful based on collective knowledge of traffic violations), disapproved in part on other grounds in *Zilke v. State*, 299 Ga. 232, 234 n. 2 (787 SE2d 745) (2016).

(b) *Prolonged traffic stop*

Ayala claims that the officer unlawfully prolonged the traffic stop by abandoning the mission of the stop to assist a drug investigation without reasonable suspicion to do so. We disagree and find that the state met its burden of proving that the traffic stop was not unlawfully prolonged.

> The [s]tate bears the burden of proving that the search of the car was lawful, and to carry this burden, the [s]tate must show that it was lawful to detain [the defendant] until the time the drug dog indicated the presence of drugs. . . . Once a valid traffic stop has been effected, the

7

Fourth Amendment prohibits the officer from unreasonably prolonging the stop beyond the time required to fulfill the purpose of the stop without a reasonable articulable suspicion of other illegal activity. But a reasonable time to conduct a traffic stop includes the time necessary for the officer to run a computer check on the validity of the driver's license and registration, and to check for outstanding warrants and/or criminal histories on the driver and other occupants. The law further allows the officer to question the vehicle's driver and/or its occupants during the course of the stop, and even to lawfully ask questions unrelated to the purpose of a valid traffic stop, so long as the questioning does not unreasonably prolong the detention.

*Rush v. State*, 368 Ga. App. 827, 831-832 (2) (890 SE2d 883) (2023) (citations and punctuation omitted).

Here, the state's evidence showed that approximately eight minutes elapsed from the time Ayala was stopped until the drug dog indicated the presence of drugs in the truck. During that time, the officer approached Ayala's vehicle, told him why he had been stopped, asked for his driver's license, and returned to his vehicle to check the license and write a warning. Less than a minute after the officer confirmed Ayala's address on his license for purposes of writing a warning, the K-9 unit completed the open air sniff indicating the presence of drugs.

"Our law is clear that it is permissible to conduct an open air search around a vehicle while a traffic stop is still in progress so long as the stop has not been

unreasonably prolonged for the purpose of conducting the search." *Rush*, supra at 832 (2) (citation and punctuation omitted). See also *State v. Allen*, 298 Ga. 1, 5 (2) (a) (779 SE2d 248) (2015) (dog sniff of a traffic-stopped vehicle is not part of the officer's traffic mission, but conducting an open air dog sniff around a vehicle during a traffic stop does not itself violate the Fourth Amendment and can be lawfully done so long as it does not lengthen the stop). Here, since the open air sniff occurred within eight minutes of the initial lawful stop and before the officer had completed the traffic tasks, we find that the state has "establish[ed] that the free air sniff [did not] unreasonably prolong[] the initial detention." *Rush*, supra at 833 (2) (holding that five-minute period between initial stop and open air dog sniff did not impermissibly extend traffic stop). See also *Allen*, supra at 16 (2) (e) (delay of over 11 minutes from stop of vehicle to dog sniff alert was lawful). Compare *State v. Thompson*, 256 Ga. App. 188, 188-190 (569 SE2d 254) (2002) (after officer had issued a warning citation and returned driver's license to defendant, 20-minute delay to wait for a drug dog was improper); *State v. Cunningham*, 246 Ga. App. 663, 664 (541 SE2d 453) (2000) (affirming grant of motion to suppress where officer had already completed investigation of alleged traffic violations before conducting open air dog sniff).

Ayala argues that evidence of a phone call from the sheriff's investigator to the officer about wanting to get into Ayala's vehicle shows that the stop was improperly prolonged. But the call occurred while the officer was still in his vehicle checking Ayala's license and gathering information for a warning. See *Matthews v. State*, 294 Ga. App. 836, 838 (2) (670 SE2d 520) (2008) (reasonable time for a traffic stop includes the time necessary to verify the driver's license and to complete any paperwork connected with the citation or written warning). While Ayala speculates about the call, there is no evidence establishing that the traffic investigation was in fact prolonged before the K-9 unit arrived because of the concurrent call. See *Allen*, supra at 13 (2) (d) (activity unrelated to the mission of the traffic stop that is done concurrently with a mission-related activity does not unlawfully prolong the stop).

"In sum, because the [evidence construed in favor of the trial court's ruling shows that the] dog sniff was conducted while [the officer was completing tasks] related to the mission of the traffic stop, the dog sniff did not prolong the stop at all." *Allen*, supra at 15 (2) (d) (emphasis omitted). And once the drug dog alerted to the presence of drugs, "the police had probable cause to search the vehicle, which then yielded the discovery of the [suspected] methamphetamine . . . inside . . . the car."

*Rush*, supra at 833 (2). See *Davidson v. State*, 257 Ga. App. 260, 264 (1) (b) (570 SE2d 698) (2002) (drug dog's alert on defendant's vehicle provided police officer with probable cause to search). Accordingly, the trial court did not err in denying the motion to suppress.

3. *Search warrant*

Ayala argues that the search warrant for the house was not supported by probable cause. But Ayala has presented no evidence that he had an ownership or possessory interest in the house. On the contrary, there was testimony that the house was owned by a woman with no known ties to Ayala, that the house was not registered to Ayala, and that he instead resided in North Carolina. Indeed, Ayala's counsel stated at the hearing that the house belongs to a woman who is not tied to Ayala, that his address is in North Carolina, and that there was no proof of his residency in the house.

> Rights such as those conferred by the Fourth Amendment are personal in nature, and cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched. . . . When an individual has no ownership or possessory interest in the premises, the individual has no expectation of privacy, and therefore, lacks standing to challenge the validity of a search.

*Thomas v. State*, 274 Ga. 156, 159 (3) (549 SE2d 359) (2001) (citations and punctuation omitted). In this case, because "[n]o evidence was presented . . . to show that [Ayala]

11

lived in the house or had an ownership interest in it[,] he had no expectation of privacy in the house and lacked standing to challenge the validity of the search [warrant]." *Reid v. State*, 341 Ga. App. 604, 617 (7) (b) (ii) (802 SE2d 42) (2017). See also *Green v. State*, 331 Ga. App. 801, 807-808 (1) (771 SE2d 518) (2015) (visitor to apartment had no standing to contest validity of search warrant); *Moody v. State*, 232 Ga. App. 499, 504 (4) (a) (502 SE2d 323) (1998) (defendant with no ownership or possessory interest in premises has "no expectation of privacy in the premises and lacks standing to challenge the validity of the search warrant").

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*